THE PEOPLE, *ex rel.* Flint, *vs.* CLINE and others, commissioners of highways of the town of Amenia.

Where commissioners of highways, in their determination or order refusing to lay out a road, state that twelve freeholders have met and decided that such road is necessary and proper, this is, in effect, an admission by them that such freeholders were competent, and unobjectionable. But as such a statement involves the question of jurisdiction, it is not conclusive, and may be re-examined by the referees appointed by the county court, on appeal from the order of the commissioners.

The fact that one of twelve freeholders who meet and view the site of a proposed road and certify whether it is necessary, and whether it will be proper to lay it out, is the brother-in-law of a trustee of a church which holds the title to a part of the land to be taken for such highway, does not render him incompetent to act. He is not " of kin to the owner" of the property, within the intent and meaning of the statute.

A trustee of a religious society is not literally an owner of its land. That is in fact owned by the society. Hence the relative of a trustee is not of kin to an owner.

THIS was a common law certiorari, to review a decision made by referees, upon an appeal to the county court, from a de-

termination of the commissioners of highways of the town of Amenia, Dutchess county, refusing to lay out a road. Augustus Flint, of Amenia, applied to the commissioners of highways of that town to lay out a new road therein. After his giving public notice of such application, 14 citizens of Amenia met, April 25th, 1853, viewed the route of the proposed road, and certified in writing that they were freeholders of that town, were liable to be assessed therein for highway labor, were not interested in the lands on the route of said road, nor of kin to the owners thereof, nor to the applicant for the said road, and that the same was necessary and proper. On the presentation of this certificate to them, the commissioners met, May 28th, 1853, on giving due notice to the public, viewed the route of the proposed road, and decided that " they do hereby refuse to lay out and alter the same according to said application," on the ground " that the interests of the town would not warrant the expenditure." The decision of the commissioners was duly filed in the town clerk's office of Amenia. The relator afterwards appealed from this decision to the county judge of Dutchess, who duly appointed Daniel D. Akin and others as referees to hear and determine all the appeals relative to this road. After giving proper notice to the commissioners of Amenia, the referees met, Sept. 30th, 1853, to hear the appeal of Flint, the relator, in pursuance of their appointment. The commissioners of highways of Amenia and Mr. Flint appeared before the referees at their meeting. The proceedings had before the referees at that meeting were stated in their return. They there certify in substance that the commissioners, at the commencement of the investigation of the appeal, objected to all further proceedings in relation thereto, on the ground that twelve competent freeholders did not view the route of the proposed road and certify that the same was necessary and proper; and that the commissioners admitted that eleven of the persons who signed said certificate were in all respects qualified according to the statute to do the same, and that one other of the three remaining persons, was also so qualified, except that, in consequence of his marrying a niece of Flint, the relator, this freeholder was of kin to the applicant for

the road.   Also that James, one other who signed said certificate, was a brother-in-law of Mr. Garnsey, who, as trustee of the Baptist church, held title to lands through which the road was proposed to be laid, and that A. P. Bailis, another of the jury, was a trustee of said church, holding jointly with Garnsey the title of said church property.   These facts, on which the objections of the commissioners were based, were admitted to be true by the parties.

The referees in their return further stated, that after hearing these facts and without viewing the route of the proposed road, or investigating the merits of the appeal, whether or not such road were necessary and proper, they affirmed the decision of the commissioners upon the ground that " the application made to the commissioners was not signed and sworn to by twelve reputable freeholders of the said town of Amenia, not interested in the lands through which the road was to be laid, nor of kin to the owners thereof, pursuant to the statute in such case made and provided."   The decision of the referees was in writing signed by the referees, and filed in the office of the town clerk of said town.   By an order of this court, made at a special term, on the 3d of March, 1856, John H. Cline, George Kirby and G. Chamberlain, commissioners of highways of the town of Amenia, were substituted as defendants in the place of the referees, against whom the action was originally commenced.

*A. Hermance*, for the relator.

*E. M. Swift*, for the defendants.

*By the Court*, S. B. STRONG, J.   The statement, in the determination or order of the commissioners, that twelve freeholders had met and decided that the proposed new road and alterations were necessary and proper, was in effect an admission by them that such freeholders were competent and unobjectionable.   As however it involved the question of jurisdiction, it was not conclusive, and might be re-examined by the referees when the matter came before them.   (*The People* v. *Goodwin*, 1 *Sel.* 568.)

The People *v.* Cline.

It seems to me, however, that at least twelve competent freeholders did meet, view the site of the proposed road, and sign a certificate that it was necessary, and would be proper, to lay it out, as the statute requires. There were fourteen in all. It is admitted that eleven were unobjectionable. One other (Reed) had married a niece of the applicant, who was also one of the owners of the land which would be required for the proposed road, and therefore the statute rendered him incompetent. Another (Bailis) was a trustee, and the remaining one (James) was the brother-in-law of another trustee, of the Baptist church, which held the title to a part of the land to be taken for such highway. And it was contended before the referees, and decided by them, that Bailis was "interested" in such land, and that James was "of kin to the owner thereof," within the intent and meaning of the statute. There is a difference in the description of the interest of the examiner, and the estate of the relative. Any interest, even a fiduciary one, in the examiner himself, might to some extent bias his mind, and be sufficient to warrant his exclusion. But it is different as to the relative. The statute requires that he should be an owner. Now a trustee of a religious society is not literally an owner of its land. That is in fact owned by the society. The relative of a trustee is not therefore of kin to an owner. There can be no reason for extending this provision beyond its literal interpretation. The words "of kin" probably include all who are related within the ninth degree; and it is going quite as far as law or common sense would require, to decide that the laying out of a proposed new highway would be void from a want of jurisdiction, because one of the examiners was a third cousin of a personal owner. To apply the exclusion to the relatives of the trustees of a church, and others acting in a fiduciary capacity, would probably cause the abandonment of half of the new roads in the country. I am aware that four of the judges of the court of appeals decided, in the case of *Oakley* v. *Aspinwall*, (3 *Comst.* 547,) that a judgment was void because one of the judges, who had taken part in the decision at the earnest request of both parties, was second cousin of a party who had no interest in the controversy, and who had been, as

was admitted on the argument, fully indemnified. But that decision was ably opposed by Chief Justice Bronson, with whom two other judges concurred; and the doctrine has never been sustained by an actual majority of the judges of that court, and I trust it never will be. It seems to me that in this case James was competent to act; and as, including him, there were twelve competent certifiers, the referees erred in deciding that there was a want of jurisdiction and for that cause affirming the decision of the commissioners.

The decision of the referees should be reversed and their order vacated. And they should be required to proceed on the appeal pursuant to the statute.

[KINGS GENERAL TERM, October 14, 1856. *Brown, S. B. Strong* and *Emott,* Justices.]