THE PEOPLE, *ex rel.* Ridgeway, *vs.* CORTELYOU and others.

From an order made by commissioners of highways, laying out a public high-way, an appeal lies to the county judge by every person who shall conceive himself aggrieved by such determination, provided he be a resident tax-payer of the town, and as such, liable to assessment therein for highway labor.

It was not the intention of the legislature to restrict the right of appeal to the applicants for the road, and those persons over whose lands it is pro-posed to lay it out.

It is the duty of referees appointed by a county judge, to hear and determine an appeal from an order of commissioners of highways, laying out a high-way, to proceed to hear the proofs and allegations of the parties, and to make and file their decision in writing, affirming, reversing or modifying the order appealed from. They have no power to dismiss the appeal and refuse to proceed further, upon the ground that the order of the county judge was improvidently or irregularly granted, or that the appellant had no right to bring an appeal.

But if the referees, instead of hearing and determining the appeal, dismiss the same, upon a preliminary objection, and thus in effect refuse to execute the trust committed to them, the remedy of the party is not by a common law *certiorari* to review the proceedings, but by a *mandamus, it seems,* to compel the referees to proceed.

CERTIORARI to review the proceedings and decision of the defendants, as referees appointed by the county judge of Richmond county, to hear and determine an appeal brought by James Ridgeway, the relator, from an order and decision of the commissioners of highways of the town of Northfield in said county, laying out a certain road therein.

*L. Brownell,* for the relator.

*Lot C. Clark,* for the defendants.

BROWN, J. The commissioners of highways of the town of Northfield, in the county of Richmond, made an order in the usual form, laying out a public highway therein, upon the application of one Daniel Willis. From this order James Ridgeway, the relator, appealed to the county judge, who thereupon duly appointed Lawrence H. Cortelyou, John H.

Healey and Webley I. Edwards, three of the defendants, referees to hear and determine the appeals which might be brought from the order of the commissioners within the time allotted for that purpose. Notice was given to the referees of their appointment, who took the oath required by the statute, and became qualified in all respects to execute the trust confided to them. At the hearing before the referees, witnesses were examined on both sides, mainly upon the regularity of the proceedings before the commissioners for laying out the road, and their authority and jurisdiction in regard thereto. It appeared in the course of the examination that the appellant, James Ridgeway, was not an applicant for laying out the road, and that it was not laid out through any lands of which he was the owner or in which he had any interest, but that he was a resident freeholder and tax-payer, in the town of Northfield. Upon these facts a motion was made by the counsel for the respondents to dismiss the appeal, which was entertained and granted by the referees, upon the ground that James Ridgeway owning no land through which it was proposed to lay out and open the road, and not being a person upon whose application the commissioners had proceeded, was not entitled to the benefit of an appeal from the commissioners' order. It is to review and reverse this decision of the referees that this writ of certiorari is brought.

The case of *The People* v. *Goodwin* (1 *Seld.* 568) is authority for the rule that, when "inferior magistrates are required by writ of certiorari to return their proceedings, it must appear, affirmatively, that they had authority to act. And when their authority and jurisdiction depends upon a fact to be proved before themselves, and such fact be disputed, the magistrate must certify the proofs given in relation to it, for the purpose of enabling the higher court to determine whether the fact be established." In proceedings to lay out and open public highways, the existence of certain facts is necessary to give the commissioners jurisdiction; such

as the consent of the owners, or the certificate in writing of twelve freeholders having the requisite qualifications, where the proposed route is through improved or cultivated land, the posting up and service of the necessary notices as prescribed by the highway act, &c. Upon the authority of the case to which I have referred, three facts are open to be controverted before the commissioners or referees, and their existence must be affirmed by the proof, in order to confer jurisdiction. Upon an appeal and hearing before the referees, the evidence to prove or disprove any of these jurisdictional facts goes to the foundation of the whole proceeding, and leads directly and inevitably to a reversal or affirmance of the order of the commissioners appealed from. (*The People* v. *Cline*, 23 *Barb*. 197.) In the present case, the referees have done nothing of the kind. They neither reverse nor affirm the order of the commissioners laying out the road ; but upon a preliminary objection that the relator had no right to bring an appeal, they have dismissed his appeal, and declined to proceed further in the examination and determination of the question of the propriety and expediency of laying out the road. In this I think they erred. The right of appeal is given to every person who shall conceive himself aggrieved by any determination of the commissioners. Whether the person bringing the appeal really conceives himself aggrieved, or whether he maintains that relation to the proposed improvement which entitles him to conceive himself aggrieved by what the commissioners may do or omit to do, is a collateral issue, and one with which the referees have nothing whatever to do. Upon receiving notice of their appointment, together with the papers appertaining to the matters referred to them, it was their duty to proceed, upon the requisite notice, hear the proofs and allegations of the parties upon this appeal, and also upon all others made from the same order within the time limited by the statute, and to make and file their decision in writing, affirming, reversing or modifying the determination of the commissioners of high-

ways as expressed in the order appealed from. They had no power to dismiss the appeal and refuse to proceed further, upon the ground that the order of the county judge was improvidently or irregularly granted.

This view, if it be correct, would dispose of the decision made by the referees in dismissing the relator's appeal, and entitle him to the relief sought for by this writ or by some other more appropriate to effect that object. I will, however, consider briefly, whether the relator was really without any right to appeal from the order of the commissioners laying out the highway. He was not an owner of the land through which the road was proposed to be laid, nor was he the person, or one of the persons, upon whose application the proceedings were instituted. To entitle a person to appeal from such an order, it is said he must stand in the relation of an owner whose land is to be taken for the improvement, or of an applicant who has set the proceedings in motion. One of these relations can alone make him a party to the proceeding. And no other than such a party can maintain the right to appeal, because, in respect to all other persons, the injury resulting from the proposed highway would be general and not special. We are referred to the case of *Davis* v. *Mayor &c. of New York*, (4 *Kern.* 506,) where the court of appeals held that an action does not lie at the suit of a resident and tax-payer of the city who does not own real estate on a street where a railway is proposed to be laid, and to whom it will not be specially injurious, to prevent its construction. But the court also held that the railway proposed to be laid down in Broadway would have been a public nuisance, in respect to which no private individual could maintain an action without showing some special injury resulting therefrom to himself. Nor would equity entertain jurisdiction, unless the public nuisance occasions, or is likely to occasion, a special injury to an individual which could not well be compensated in damages. This is the rule of the common law

applicable to public nuisances and actions by private persons therefor.

It is to be observed that the right of appeal from the order of highway commissioners does not depend upon any general rule of law, such as obtained in the case referred to. It exists by statute, in regard to a special class of public improvements affecting a particular locality. The highway act gives the right of appeal to " every person who shall conceive himself aggrieved by any determination of the commissioners of highways, either in laying out, altering or discontinuing, or in refusing to lay out, alter or discontinue any road. (§ 8 *of the act of the* 14*th Dec.* 1847.) This is sufficiently comprehensive to include the resident freeholders and taxpayers of the town where the road is located. And its general terms show that the legislature had no intention to restrict the right to the applicants for the road and those persons over whose lands it was proposed to lay it out. The burden of paying the damages for the lands taken for the road is cast upon the tax-payers of the town and their property therein, as are also the expenses of making and maintaining the bridges thereon. The burden of performing the labor and keeping the road in repair, is imposed not upon the people of the town generally, but upon the people of the particular road district where the road is located. It may be that burdens of this character may become oppressive and grievous, and it is certainly wise and just that the persons charged with their payment should have an opportunity to be heard upon the legality and necessity of the improvement. These considerations refer exclusively to the creation of new roads and highways. But what shall be said of the right of appeal from orders of the commissioners altering or discontinuing roads already in existence, and, it may be, of immemorial use. The same sentence confers the right of appeal in both cases. To entitle a resident freeholder and tax-payer to be heard upon appeal from an order discontinuing a public road which he, and those under whom he claims, have used time

out of mind, and which contributes to his convenience and enhances the value of his property, must it appear that the road runs through his lands, or that he is an applicant for its discontinuance ?    This is the construction asserted by the decision of the referees, and claimed to be the true one by the counsel for the defendants, upon the argument.    I dissent from it.    I regard it as at variance with the letter, as it also is with the spirit and intention, of the statute.    But again ; it is conceded that the applicant for laying out, altering or discontinuing a road may appeal from the order or determination of the commissioners.    The party who initiates such a proceeding, and fails before the commissioners, should certainly be allowed to prosecute his appeal from the adverse determination.    This seems too plain for argument.    The applicant, however, need not be an owner of lands through which the road is proposed to be laid.    He need have no special interest in the proposition to lay out, alter or discontinue the highway in question.    By the 58th section of the act in regard to laying out, altering and discontinuing public and private roads, it is provided that " every person liable to be assessed for highway labor, may apply to the commissioners of highways of the town in which he shall reside to alter or discontinue any road, or to lay out any new road."    To entitle a person to become an applicant and an actor in such a proceeding, his only qualification is that of liability to assessment for highway labor in the town.    To entitle a person to prosecute an appeal from an order or determination in such a proceeding, it is enough if he be a resident tax-payer of the town, and as such liable to assessment therein for highway labor.    The provisions of the two sections, taken together, leave no doubt as to the construction to be put upon that in regard to the right of appeal.

Nevertheless, I think the relator has mistaken his remedy. It was the duty of the referees to hear the proofs and allegations of the parties, and make a determination which should reverse or affirm the order of the commissioners.    This they

have not done. They have taken some proof and then dismissed the appeal. In effect, they have refused to execute the trust committed to them. There is nothing in their proceedings which it is the office of a common law certiorari to review and correct. It brings up the record and examines the action and proceedings of the inferior magistrate, so far as his authority and jurisdiction is concerned, but no further. His decision upon all other facts is final, and will not be reviewed. In respect to the remedy, the case of *The People ex rel. Rogers* v. *The County Judge of Clinton*, (13 *How. P. R.* 277,) is similar to the present. The county judge had erroneously dismissed an appeal from the justice's court while an order for an amended return was pending, unexecuted. It was held that if he acted ministerially, or if he had no power under section 364 of the code to dismiss the appeal, the matter was not within his judicial cognizance, and therefore the order to dismiss was a nullity, and a mandamus to hear and decide the appeal should issue. In *The People ex rel. Bendon* v. *The County Judge of Rensselaer*, (*Id.* 398,) appeals had been taken from two judgments rendered under the provisions of the mechanics' lien law. The county court, upon motion, dismissed the appeals upon the ground that it had no jurisdiction. The court at special term was of opinion that the county court erred, and awarded a writ of mandamus requiring the county judge to reinstate the appeals and to hear and decide them. These authorities indicate the true remedy of the relator. Indeed, I do not see what judgment could be rendered upon this proceeding. The referees have not, in effect, done any judicial act within their cognizance which we can either affirm or reverse.

An order should be entered quashing the writ of certiorari and all the subsequent proceedings, without costs to either party, and without prejudice to any other remedy which the relator may be advised to pursue.

Scrugham, J. concurred.

---

EMOTT, J. Without expressing any opinion whether Ridgeway could appeal, I think the proceeding by certiorari was not the proper remedy.

Proceedings quashed.

[KINGS GENERAL TERM, February 10, 1862. *Emott, Brown* and *Scrugham,* Justices.]