SCHOONMAKER *vs.* CLEARWATER & WOOD.

*A judgment* rendered by a justice of the peace who is related to either of the parties is absolutely void.

The statute having declared that no judge of any court "can sit," in such a case, all the acts of the justice are *coram non judice* and of no effect whatever; and this although no objection was made to the exercise of jurisdiction, at the trial, and no proceedings have been had to set aside or vacate the judgment.

THIS was an action of trover brought by the plaintiff to recover the value of certain articles of personal property alleged to have been converted by the defendants. The answer denied that the defendants possessed the property

mentioned in the complaint, or that they wrongfully detained the same from the plaintiff, or that the said property belonged to the plaintiff. The cause was tried at the Ulster circuit, on the 15th day of July, 1853, before the late Justice WATSON and a jury, and upon that trial the following facts were proved: On the 20th day of December, 1851, one Andrew Roosa, who was then the owner of the property in question, mortgaged the same to the plaintiff. The mortgage was filed in the clerk's office in the town of Marbletown, (the town in which Roosa lived,) in February, 1852. It was given to secure the payment of $175, on or before the first day of September, following its date, with interest. It also contained the following clause, to wit: "But in case the said Andrew Roosa shall, on or before the first day of September, 1852, pay to the said Andries Schoonmaker, the said debt and interest, then the sale and transfer be void; but in case of the non-payment at the time above mentioned, or in case the said Schoonmaker shall at any time deem himself insecure, then, and in either of these cases, it shall be lawful for the said Andries Schoonmaker, to take possession of the said property." The defendants had a store of goods at Highfalls, in the county of Ulster, and did business there under the name of Clearwater & Wood. James H. Elmendorf was a full cousin of the defendant, Wood. And there was some evidence tending to show that he was a second cousin of Clearwater. On the 28th of May, 1852, the defendants commenced an action against the said Andrew Roosa, before the said James H. Elmendorf, who was a justice of the peace of the town of Marbletown, to recover a *partnership* debt; and on the 23d day of June, 1852, they recovered a judgment before the said Elmendorf for the sum of $82.22, damages and costs. On the same day an execution was issued upon the said judgment and placed in the hands of one Jacob Yaple, a constable, for collection. Yaple, by the direction of the defendant, Clearwater, levied upon the property in question, which at the time was in posses-

sion of Roosa, and finally sold the same on the first day of July, 1852, Clearwater receipting the execution for the firm. Between the day of the levy and of sale, the plaintiff demanded the property of said Yaple and of Clearwater, and forbade the sale. The jury found a verdict in favor of the plaintiff for the sum $193.88, damages, upon which verdict a judgment was perfected, with costs. The defendants having prepared and served a case with exceptions, now moved for a new trial, having brought the proceedings into this court by appeal.

*J. Hardenburgh,* for the appellant.

*T. R. Westbrook,* for the respondent.

*By the Court,* MILLER, J. The defendants justified the sale of the property claimed by the plaintiff, on the trial of the cause, under an execution issued upon a judgment rendered in their favor by a justice of the peace, who was related to one or both of the defendants, and the judge upon the trial held that the judgment was absolutely void and no protection to them. It is now insisted by the defendant's counsel, that the judgment was not void, but merely voidable, and the plaintiff being a stranger could not question it, in this action. It is declared by statute that no judge of any court can sit as such, in any cause to which he is a party, or in which he is interested, or in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties. (2 *R. S.* 275, § 2.) While it is conceded that this provision of the statute applies to a justice of the peace, it is said that as no objection was made and no proceedings had to set aside or vacate the judgment, it remains in full force and would be valid and good until set aside for that reason.

It therefore becomes an important inquiry how far the courts have gone in pronouncing such judgments absolutely

void, and as it is claimed to be still an open question, I will refer to some of the leading cases where the subject has been discussed and adjudications had.

In *Edwards* v. *Russell*, (21 *Wend.* 63,) which was a certiorari from a justice's judgment, it appeared that after issue joined and the return of a venire, the defendants moved for a nonsuit on the ground that the plaintiff and the justice were *cousins*, offering to prove the fact should it be denied; and the justice returned that such was the general understanding, and rendered judgment against the plaintiff for the costs. The court held the judgment void and affirmed the judgment of the common pleas reversing it. Cowen, J. remarked: "Where there are none other [judges] as in case of a justice of the peace, he cannot issue process. Such an act would be nugatory and void, for he cannot sit to receive the return. The objection meets him at the threshold; and if he issue process inadvertently, he ought simply to withdraw himself from the cause. *He cannot sit*, says the statute. The meaning is not merely that the interests of the parties are unsafe, but the general interests of justice. Decency forbids that he should be seen acting either for or against his father, brother or cousin, &c." Again, the learned judge says "any judgment rendered by him is therefore void." In this case the question was distinctly presented by the return of the justice.

In *Foot* v. *Morgan*, (1 *Hill*, 654,) a motion was made to set off a judgment in favor of the defendant, obtained in a justice's court against a judgment rendered in favor of the plaintiff, in the supreme court. The motion was opposed upon the ground that the justice's judgment was void for want of jurisdiction, and it was shown that Morgan, the defendant, was the real plaintiff before the justice and was related to him. Cowen, J. cites the case of *Edwards* v. *Russell*, (21 *Wend.* 63,) and says: "The judgment rendered by him is there said to be void. It is *coram non judice*, and may be *questioned collaterally*."

In *Post* v. *Black*, (5 *Denio*, 66,) where the question arose upon a justice's return to a *certiorari*, stating the fact of his relationship to one of the parties, the court reversed the judgment of the justice upon that ground. McKissock, J. cites the statute, and refers to 1 *Hill*, 654, and 21 *Wend.* 63, as authority. The question was presented in the case itself, and did not arise in a collateral proceeding.

. In *Oakley* v. *Aspinwall*, (3 *Comst.* 547,) the court of appeals vacated a judgment of reversal and ordered a re-argument, because one of the judges was related to one of the parties; although the party was a mere surety for another and fully indemnified against the consequences of the suit, and the judge had remained on the bench at the special request and solicitation of the counsel for the party making the motion. The court held that when a judge is disqualified to sit, by reason of consanguinity to one of the parties, he cannot sit even by the consent of both parties; and if he does the judgment will be vacated. Hurlbut, J. who delivered the prevailing opinion, in commenting upon the statute, says: "The exclusion wrought by it is as complete as is in the nature of the case possible. The judge is removed from the cause and from the bench; or if he will occupy it, it must be as an idle spectator and not as a judge. *He cannot sit* as such." Again he adds: "He cannot sit says the statute. It is a legal impossibility, and so the courts have held it," citing *Edwards* v. *Russell*, and *Foot* v. *Morgan*. Bronson, J. dissented, holding that there was no authority for the doctrine that the judgments were void, in courts of superior and general jurisdiction, although by implication he seemed to concede that some of the cases cited held the other way in reference to judgments and proceedings of inferior courts, and officers exercising special and limited powers.

The soundness of the prevailing opinion in the case is also questioned by Strong, J. in *The People* v. *Cline*, (23 *Barb.* 200,) the learned judge claiming that the doctrine was not sustained by an actual majority of the judges of the court

of appeals. Four of the seven judges who took part in the proceeding were in favor of granting the motion to vacate the judgment.

In *Converse* v. *McArthur*, (17 *Barb.* 410,) it was decided that an order for the support of an indigent parent, made by a court of sessions, consisting of the county judge and two justices of the peace, one of the justices being also a superintendent of the poor, and joining in the application and notice and in the motion for the order, was void, even although the order was entered by consent of the attorney of the son. Hand, J. expressed an opinion that the order was void and that the statute and the case of *Oakley* v. *Aspinwall* were decisive. The case involved the construction of the provision of the statute, (2 *R. S.* 275, § 2,) before cited.

In *Paddock* v. *Wells*, (2 *Barb. Ch.* 331,) Chancellor Walworth, after quoting from Judge Cowen's opinion in *Edwards* v. *Russell*, says that he is "not prepared to say that the judgment rendered in such a case is absolutely void where there was nothing before the judge, at the time he rendered such judgment, to show that the real party in interest in the suit was related to him either by affinity or consanguinity, as in the case of *Foot* v. *Morgan*, (1 *Hill*, 154,)" and suggests that the judge should refuse to hear the cause unless both parties, upon being informed of the fact, shall join in a request that he hear and decide it. Although the chancellor may be considered as disapproving of the doctrine laid down in the cases to which he refers, his views as there expressed can scarcely be regarded as overruling it. The decision of the court of appeals in *Oakley* v. *Aspinwall*, although made by four of the seven judges, was held to be controling in that case, and perhaps should be considered as settling the question so far as the principle it establishes is concerned. I am also inclined to the opinion that the weight of the authorities which I have cited preponderates strongly in favor of the doctrine, that a judgment rendered

Schoonmaker *v.* Clearwater.

by an officer, related to either of the parties, is *absolutely void*, although that question was not distinctly presented in most of them. More especially is such the case in courts of special and limited jurisdiction, whose powers are derived from the statute alone.

The statute is very explicit that he cannot sit as a judge in any such case. Its language is very plain that "no judge of any court can sit as such in any cause," &c. "in which he would be excluded as a juror by reason of consanguinity or affinity to either of the parties." Does it mean that he may sit if not objected to; that his sitting may be waived by the parties; that none but the parties can object, and that unless objected to in the proceeding he can sit? If it did, then it would be a construction qualifying this very emphatic language, so as to confine it to his sitting in some cases and being excluded in others. The statute never was intended for any such purpose. Its design, spirit and object was to prevent corruption and favor in our courts of justice, and to free them entirely from even a suspicion of bias or partiality. It was, I think, intended to make the test of relationship an essential element of jurisdiction, which could not be waived or avoided. Its language is broad, clear and emphatic, and when in violation of it a judge assumes to do what he is most emphatically prohibited from doing, all his acts are *coram non judice*, and of no more effect than if a stranger had thus taken upon himself powers of such a character, without a semblance of right or authority. He is entirely without jurisdiction of the person of the party, because the law says *he cannot sit*, and being without authority, his exercising jurisdiction is not an error of judgment alone, to be corrected on review before a higher tribunal. It does not present the case of an inferior court, which has acquired jurisdiction and errs in exercising it, but one where there is an entire failure of original jurisdiction, which renders the whole proceeding void and of no effect. (*See Hard* v. *Shipman*, 6 *Barb.* 621.)

Schoonmaker *v.* Clearwater.

The cases cited by the defendant's counsel, to establish the proposition that the judgment was merely voidable, are not analogous, and do not sustain that doctrine. In *Lamoure* v. *Caryl,* (4 *Denio,* 370,) where in a justice's court the plaintiff's claim and the defendant's set-off together exceeded $400, and the justice gave judgment for the balance, the justice had jurisdiction of the person and subject matter and only exceeded his powers. In *Koon* v. *Mazuzan,* (6 *Hill,* 44,) title to lands came in question, on the trial before the justice, and it was held that the statute did not mean to deprive him of jurisdiction absolutely, but left him to judge, and if he made a mistake the judgment was voidable. Here the justice had jurisdiction also, and committed merely an error of judgment. The same remarks will apply to *Willoughby* v. *Jenks,* (20 *Wend.* 96.)

In *Tiffany* v. *Gilbert,* (4 *Barb.* 320,) a judgment was rendered by a justice of the peace not residing in the same town with either of the parties, nor in an adjoining town, in violation of the statute, and it was held that the jurisdiction being local, by statute, the judgment was not *coram non judice,* but erroneous merely. The statute (2 *R. S.* 226, § 8,) does not prohibit the justice from sitting in such a case, and the error was of that class which could have been waived by an appearance.

In any view in which the question may be considered it appears quite clear that there was an entire want of jurisdiction in the justice and his proceedings were utterly void. It was very much like the case of a justice who is a tavern keeper, and who is forbidden to act on grounds of public policy. (*See Low* v. *Rice,* 8 *John.* 409 ; *Clayton* v. *Per Dun,* 13 *id.* 218.) He is prohibited from acting in any such case, and the judge decided properly in holding the judgment void.

The other objections taken are not available, and a new trial must be denied, and the judgment affirmed, with costs.

[ALBANY GENERAL TERM, September 7, 1863. *Gould, Hogeboom* and *Miller,* Justices.]