## SUPREME COURT.

THE PEOPLE OF THE STATE OF NEW YORK agt. WILLIAM M. TWEED and THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK.

*Motion by defendant Tweed, at the close of the evidence, to dismiss the complaint.*

The defendant Tweed, at the close of the evidence, moved to dismiss the complaint as to certain items of the plaintiffs' demand, and also as to all the causes of action.

Denied, for the reason: *First.* That the positive testimony of several of the witnesses of conversations with Tweed, and others of acts and divisions of moneys, and of additions to and swellings of bills, make it a question for the jury.

*Second.* The objection made that there is no proof tending to show that bills in favor of certain persons named, for which warrants amounting to over $600,000 were issued, were false, and consequently could not be recovered in this action, is answered by stating that, although no witness has testified directly to their falsity, there is sufficient evidence to justify their submission to the jury. None of these bills were audited in the manner prescribed by the act of 1870, but directly in violation of it. Also, evidence has been given tending to show that Tweed received to his own use twenty-five per cent of the amount of such bills. The force of this evidence and the conclusion to be drawn therefrom is for the jury.

*Third.* The objection that warrants issued to certain individuals named, amounting to over $2,000,000, were never indorsed by the payees; that, consequently, the money which the Broadway Bank paid was improperly paid, and that, in judgment of law, the money obtained thereon is still in the county treasury, is answered by stating that, assuming that the name of the payee upon these warrants is forged, the question is not now whether a remedy does or does not exist against the bank, but whether, when the money has been actually taken from the treasury, the remedy does not exist against the taker. It will not do to hold that the county cannot recover from the forger and the wrongful taker of its money the fruits of its crime, because it has also a remedy against its

People agt. Tweed.

agent who paid the money in good faith to the party who wrongfully deceived it.

*Fourth.* The objection that John H. Keyser and others named have been released from liability, and, as they were co-conspirators with Tweed, their release, or the release of either, discharges all, is sufficiently answered when it appears that the most that can be said on that question is, that certain influential citizens who have been conspicuous in these prosecutions have promised them protection. If either should be prosecuted, no defense upon the ground of a release could be pleaded. No person authorized officially to make a promise has made any, and the entire absence of consideration would make any *nudum pactum,* if made. A release, to be effectual in such a case, and a discharge of the persons named, must be a technical release, under seal.

*Fifth.* In regard to the question that the act of 1875, which authorizes this action, is unconstitutional, the decision of the general term of this district passed upon this question, upon the defendant's appeal from the order refusing to vacate the order of his arrest, is binding upon this court and must be followed.

*Sixth.* The objection that the action of the board of audit was judicial, and that no action can be maintained against a judge for acts done in that capacity, cannot prevail, because the defendant Tweed never acted as a member of the board of audit. His functions as a judge were never exercised. Instead thereof, he corruptly agreed to make bills. Besides, when these bills came before the board of audit, Tweed, according to the evidence of the plaintiffs, was interested — the bills had all been increased to give him a per centage. The Revised Statutes declare: "No judge of any court can sit as such in any cause to which he is a party, or in which he is interested," &c.

*Seventh.* The remaining question is: What damages can the plaintiffs recover? If the evidence of the plaintiffs be true, the case is presented, not only of an adviser of an over-draft, but that of a person who has advised the over-draft, ordered it himself, and distributed the proceeds. The damage which the wrong has caused can be recovered, even though the party did not receive all its fruits. Where the fraud consists in the additions to honest demands, the recovery must be limited to the injury. The damages to be recovered in this action, therefore, are those which the alleged fraud has caused.

*New York Circuit, Part II, March 6,* 1876.

MOTION by defendant Tweed, at the close of the evidence, to dismiss the complaint as to certain items of the plaintiffs' demand, and also as to all the causes of action.

*David Dudley Field, Field & Deyo & Mr. Eddlestein,* for defendant Tweed.

*Charles O'Conor, James C. Carter & Wheeler H. Peckham,* for plaintiffs.

WESTBROOK, *J.*—This suit has been instituted and. is sought to be maintained by force of the provisions of chapter 49 of the Laws of 1875, entitled "An act to authorize the people of the state to bring and maintain certain actions for the recovery of public moneys and property," and the general scope of the complaint may be thus stated : Section 4, of chapter 382, of Laws of 1870, entitled "An act to make further provision for the government of the county of New York," provided that, "all liabilities against the county of New York, incurred previous to the passage of this act, shall be audited by the mayor, comptroller, and the president of the board of supervisors, and the amounts which are found to be due shall be provided for by the issue of revenue bonds of the county of New York, payable during the year 1871, and the board of supervisors shall include in the ordinance levying the taxes for the year 1871 an amount sufficient to pay said bonds and the interest thereon. Such claims shall be paid by the comptroller, to the party or parties entitled to receive the same, upon the certificate of the officers named therein." After referring to this provision of the act, the pleading charges that the defendant Tweed, who was the chairman of the board of supervisors referred to therein, instead of performing, together with his associates, the duty imposed upon him of a faithful audit of bills presented, conspired with one James Watson and others, fraudulently to present false and fictitious claims and accounts for their own benefit, and in regard to the pretended accounts of certain individuals specified .in the schedule to the complaint, the gross amount of which is over $6,000,000, such conspiracy was actually accomplished, the money obtained

People agt. Tweed.

from the treasury and converted to the use of such conspirators. For the amount thereof ($6,198,957.85), with interest thereon, from the 1st day of September, 1870, judgment is demanded against the defendant Tweed, together with the costs of the action.

It is scarcely necessary to inquire whether each and every averment of the complaint is sustained by proof to the extent charged. Without expressing, at this stage of the cause, any opinion upon the force of the evidence offered to establish the material allegations, which have been substantially recited, it is sufficient to observe that the positive testimony of Andrew J. Garvey, James H. Ingersoll, John Garvey, John H. Keyser, George S. Miller and John Kennard, of conversations with Tweed and others, of acts and divisions of moneys, and of additions to and swellings of bills, makes questions for the jury, whether or not the complaint is not substantially maintained in some particulars, at least. It is, however, strenuously maintained, that there is no proof whatever tending to show that any part of the bills in favor of Archibald Hall, Jr., A. W. Lockwood, The New York Printing Company, The Transcript Association, The Manufacturing Stationers, J. W. Smith, C. H. Jaenbus, and E. Marrener, for the payment of which warrants amounting to $611,076.40 were issued, was false, and that consequently the money paid thereon cannot be recovered in this action. It is true, that no witness has directly testified to the falsity of the. charges made thereon, but there is sufficient evidence to justify the submission of these items to the jury. None of these bills were audited in the manner prescribed by the act of 1870, so far as the evidence shows. There is no testimony evincing that the board of audit, created by said act, of which Mr. Tweed was one, ever met as such to pass upon such claims ; on the contrary, there is some affirmative proof to show it never met, and that instead of an investigation of each bill presented, at the only meeting which said board ever held (May 5th, 1870), it adopted a resolution which substantially

declared that its duties would never be discharged, and resolved that every bill collected by the county auditor from the various committees of the board of supervisors for liabilities incurred prior to April 26th, 1870, should be audited and allowed by such board of audit, provided it was certified by the clerk, or president, of the board of supervisors that such bill had been authorized by said board, or its appropriate committee. The bills we are considering were verified by no oath or affirmation, and no judgment of the board of audit was ever, so far as appears, exercised in regard to them or any of them. In addition to this, evidence has been given tending to show that a per centage to various parties, Mr. Tweed among others, was calculated upon these bills, and that twenty-five per cent of the amount thereof was actually paid to the defendant. The force of the evidence to which I have referred, and the conclusion to be drawn therefrom, is for the jury. As they are ultimately to pass upon all questions of fact, it would be improper to discuss this point any further. There is enough to submit these items of the plaintiffs' claim to those who, under our theory of jurisprudence, make the body to determine issues of facts.

It is further objected that warrants issued to J. A. Smith, C. D. Bollar, Keyser, Davidson, Halsey & Co., and A. G. Miller, amounting to $2,078,471.38, were never indorsed by the payees, and that, consequently, the money which the Broadway Bank paid was improperly paid, and that, in judgment of law, the money obtained thereon is still in the county treasury. In deciding this point, I must assume the correctness of the plaintiffs' allegations and positions upon the facts, for it is impossible for me now to say that the jury will not so find, and if I decide upon the assumption that they will find the facts in favor of the defendant, they will then be deprived of the right to determine those matters which the law commits to them. Assuming that the indorsement of the name of the payee upon these warrants is forged, the question is not before me, whether a remedy does or does not

exist against the bank, but whether, when the money has been actually taken from the treasury of the county, the remedy does not exist against the taker. The warrants were not drawn upon the Broadway Bank, but upon the county treasurer at the bank. They were paid by the treasurer through the bank, the payments recognized by and charged to the treasurer. If the jury find that the conspiracy to defraud existed, then, as the act of one conspirator in furtherance of the common object is the act of each, such finding involves the further facts that Mr. Tweed, himself, forged the payees' names, and himself obtained the money. Will it do to hold that the county cannot recover from the forger and the wrongful taker of its money, the fruits of its crime, because it has also a remedy against its agent who paid its money in good faith to the party who wrongfully deceived it? Is not the conclusion obvious?

It is further urged that John H. Keyser, Andrew J. Garvey, Richard B. Connolly, James H. Ingersoll, and the estate of James Watson have been released from liability, and as they were co-conspirators with the defendant Tweed, their release, or the release of either, discharges all. It is not urged that either Keyser, Garvey, Ingersoll or Connolly has paid any money, or obtained a formal release from any person. The most that can be said is, that certain influential citizens, who have been conspicuous in these prosecutions, have promised them protection. It would hardly be argued that if either should be prosecuted, any defense upon the ground of a release could be pleaded. No person authorized officially to make a promise has made any, and the entire absence of consideration would make any a *nudum pactum*, if made. In *Frink* agt. *Green* (5 *Barb.*, 445), on page 459, the court, by PAIGE, P. J., says : " A release of one of two or more joint debtors, whether bound jointly or jointly and severally, discharges the original contract, and may be pleaded in bar of an action on the contract. But the release, to have this effect, must be a technical release under seal " (*De Zeng* agt.

*Bailey,* 9 *Wend.,* 336 ; *Rowley* agt. *Stoddard,* 7 *Johns.,* 207 ; 4 *Wend.,* 365). A covenant not to sue one of the joint obligors or promissors does not amount to a release, but is a covenant only. It does not, at law, discharge either of the joint obligors or promissors; and a suit may, notwithstanding such convenant, be brought upon the original contract against all, if it was a joint contract, and against the one to whom the covenant was not given, if the contract was joint and several (7 *Johns.,* 210 ; *Hosack* agt. *Rogers,* 8 *Paige,* 237). An agreement not to sue one of several joint debtors does not injure the other debtors. It does not defeat the right of the debtor sued to compel contribution from his co-debtors. It is not in the power of the creditor to alter the law between joint debtors (*Catskill Bank* agt. *Messenger,* 9 *Cow.,* 38, per SAVAGE, *Ch. J.*).

In regard to the estate of James Watson, it is conceded the recovery was for demands not embraced in this action, and whilst Mr. Keyser has placed property in the hands of a trustee to secure the city, such deposit was his own act, and no part thereof has been in the hands of any city official.

It is also urged, upon the part of the defendant, that the act of 1875, which authorizes the people to bring this action, and that despite the pendency of any other action " by or on behalf of any public authority other than the state," is unconstitutional for various reasons. Time will not allow me adequately to discuss the questions which this point involves, and which have been so ingeniously argued and presented in the printed brief, which the learned counsel for the defendant has presented. Undoubtedly these are grave questions to be hereafter considered. I have had occasion to discuss them in part in *People* agt. *Field* (*Albany special term, October,* 1875), and to that opinion I refer. Were my own views in accordance with those of the counsel of the defendant, I would not, even then, be able to follow them. Upon the appeal from the order refusing to vacate

People agt. Tweed.

the order of arrest in this cause, the general term of this district has passed upon this question. The opinion was written by judge DANIELS, and concurred in by his associates (*See printed papers on appeal to court of appeals, fol.* 422 *to* 429). That decision is binding upon me and must be followed. If wrong, it must be elsewhere corrected; it is beyond my power.

It is further urged that the action of the board of audit was judicial, and that no action can be maintained against a judge for acts done in that capacity. This is undoubtedly the rule, but the proposition assumes the point to be proved. The board of audit was undoubtedly called upon to exercise judicial functions, and Mr. Tweed, if he had acted as a member, might, if a reason presently to be stated did not divest him of that character, be deemed a judge. But he did not; his functions were never exercised; instead thereof, as the evidence of the plaintiffs tends to prove, and which the jury must decide, he corruptly agreed to make bills. On this ground the general term in this very case (*see opinion of* DANIELS, *before referred to, folios* 413 *to* 418), held this action maintainable. But another reason also influences me. If the evidence of the plaintiffs is true, when these bills came before the board of audit (if the board ever did meet) Mr. Tweed and Mr. Connolly were both interested. The bills had all been increased to give them a per centage. The Revised Statutes of our state (2 *vol. Edmond's edition, page* 284, *sec.* 2) declare: "No judge of any court can sit as such in any cause to which he is a party, *or in which he is interested,* or in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties." It has been held, both in the supreme court and in the court of appeals (*Oakley* agt. *Aspinwall,* 3 *Coms.,* 547; *Schoonmaker* agt. *Clearwater & Wood,* 41 *Barb.,* 200, *the latter case being affirmed in court of appeals, under name of Chambers* agt. *Clearwater,* 1 *Keyes,* 310), that when the judge is disqualified under this section, he ceases to be a

judge.  Tweed and Connolly, if the plaintiffs' case is true, were not only corrupted by the payment of money, but were "interested" in the very claim upon which they were to pass.  If, under such circumstances, they undertook to act, they could not, neither *de facto* nor *de jure*.  The statute prevented their *sitting* as judges.  Its language is: "No judge of any court can sit as such."  They took from their shoulders the judicial ermine and its protection when they became interested in the accounts to be presented.  Their judgment was no judgment, their action was no action; it was utterly *coram non judice*, and the judicial immunity is invoked in vain, because they were not judges; that, under the statutes of New York, was a legal impossibility.

The remaining question is: What damages can the plaintiffs recover, if any?  That was also considered by the general term in this case.  It was there (*see folio* 413 *of papers before referred to*) said: "These facts, which were established by the papers produced on the application for the order, rendered the defendant Tweed, and those co-operating with him, joint wrong-doers, and as such liable for the entire loss produced by the acts complained of.  That results from the execution of the fraudulent combination, in which he appears to have been the controlling individual; and, in that state of the case, the law will impose upon him, individually, a liability coextensive with the moneys wrongfully abstracted, although they may have been partially received by others acting with him."  If the evidence of the plaintiffs be true, the case is presented not only of an adviser of an over-draft, which the counsel for defendant put, but that of a person who has advised the over-draft, ordered it himself, and distributed the proceeds.  Can there be a doubt as to the rule in such a case?  The damage which the wrong has caused can be recovered, even though the party did not receive all its fruits.  But what is that damage?  Can it be argued that a wrong caused the county to pay that which it justly owed, and can the defendant be asked to reimburse the sums which have been paid to extinguish honest debts?  The argument

which maintains the affirmative of this proposition assumes that the county has been damaged by the payment of that which could have been legally enforced, and that what was owing to a party was obtained by fraud. The proposition contradicts itself, and states an impossibility. The fraud consisted in the additions to honest demands, and in this, as in all cases of a similar character, the recovery must be limited to the injury. The purchaser who retains property, the qualities of which have been fraudulently misstated, recovers the difference between the value of the property as it is and what it should have been if the statements made at the time of the purchase were true. And he who has paid a bill partly true and partly untrue must, while he retains the fruit represented by the honest part thereof, be content with a recovery which gives back to him that which was dishonestly taken. It is scarcely necessary, however, to argue. The court of appeals of this state, in the case of *State of Michigan* agt. *Phœnix Bank* (33 *N. Y.*, 9), held that money obtained by fraudulent representations, which procured an award in its favor, could be recovered back, " but only to the extent that the state was damnified by the money." That rule applies to the present action, and is decisive of it.

In reaching the conclusion that the damages to be recovered in this action are those which the alleged fraud has caused, I have not overlooked the fact that the law of 1870 contemplates and requires an audit of all claims before payment, and if there was no audit, in one sense the whole amount of the bills was illegally paid. This consideration, however, is not so forcible to my mind as the great principle that the remedy and recovery (putting out of view all claim for punitive damages, because the complaint does not ask them), should be commensurate, and only commensurate, with the injury. As the county of New . York has and retains the fruit of the bills, so much as that represents should be deducted from the claims. It surely ought not to enjoy property it has purchased, and the results of labor

performed, and recover the money it justly owed therefor. This would be inequitable and unjust, and cannot be allowed.

Whilst I fully agree with the learned counsel of the defendant, that the plaintiffs can only recover for the excess of the moneys paid beyond what was justly due the claimants, I fail to see how other claims of Keyser against the county can avail the defendant Tweed. It was not for the payment of these other unadjusted claims that the warrants in favor of Keyser were drawn. They were given to pay bills then rendered, and the money which Tweed wrongfully caused to be paid thereon was no less wrongfully obtained because Mr. Keyser had other bills not rendered, which might have been claimed, but were not. The fraud took money wrongfully, and that can be recovered, even though the party rendering the bill may have other valid claims still unpaid, and which he can recover. Those bills formed no basis for the payment, and the legality of the payment must stand upon the grounds then made.

It is true that Mr. Tweed has been criminally punished for the crimes which he is alleged to have committed, but though the people punished him for those, they do not bar the civil remedy, any more than an indictment and conviction for stealing bars the civil remedy to recover the property from the thief, which the injured party brings. The Code itself provides (*sec.* 7): " Where the violation of a right admits of both a civil and a criminal remedy, the right to prosecute the one is not merged in the other."

I have endeavored to dispose of the various points presented. The views expressed have been very hastily committed to paper. If wrong, a higher court will correct them. Several of the questions are exceedingly interesting, and certainly the learned counsel for the defendant has done his simple duty to his client and the court, in presenting and enforcing them, and to such presentation and enforcement we have listened with great pleasure and profit.