## SUPREME COURT.

CHARLES C. WARD, Assignee, &c., respondent, agt. JOHN C. BENSON, appellant.

A cause of action in *trover* is *assignable ;* and the assignee can sue in his own name.

Where personal property has been wrongfully taken and converted by a defendant, the *general assignee* of the owner may maintain an action for such conversion against the defendant, although the property was taken from the defendant in another state under an attachment in favor of the creditors of the owner, *before the general assignment* was executed by the owner.

The defendant was entitled to set up the amount for which the property was sold upon the attachment, as a defense to that amount. If the property was sold much below its actual value, the defendant, being the wrong-doer must suffer the loss of the depreciation.

The rule of *damages* in such a case, is ascertained by showing what the property was actually worth at the time of the taking and conversion, and deducting therefrom the amount for which it was sold on the attachment.

*New York General Term January*, 1866.

*Before* INGRAHAM, *F. J.*, CLERKE *and* BARNARD, *Justices.*

M. B. STAFFORD & Co., the plaintiff's assignors, were the owners of certain silk in Patterson, N. J., which, it is alleged in the complaint, was unlawfully converted by the defendant. This was on the 13th December, 1859.

On the 23d February, 1860, said Stafford & Co. made a general asssignment to the plaintiff for the benefit of their creditors.

On the 13th January, 1860, an attachment was issued at the suit of Nathaniel Lane, a creditor of the assignors, and the silk above mentioned was taken from the defendant by the sheriff of Passaic county, sold at public auction, and the proceeds distributed among the creditors of M. B. Stafford & Co., the assignors.

The attachment under which the property in question was taken, was issued by and under the advice of the assignors, before their assignment to the plaintiff.

The court was requested to charge the jury, " that the property mentioned in the complaint having been taken from the defendant under process of law, in New Jersey, before Stafford & Mott transferred the same by their assignment to the plaintiff, he, the plaintiff, is not entitled to recover the property, or the value thereof."

The court was also requested to charge, that the plaintiff had failed to prove more than nominal damages.

The court refused to charge either of the requests, and the defendant excepted.

The court charged that the taking of the property by the sheriff, was a defense to the extent of $1,883.41, being the proceeds of the sale under the attachment, and which sum was applied to pay Stafford & Mott's debts.

To this defendant excepted.

C. BAINBRIDGE SMITH, *attorney and counsel for defendant and appellant.*

*First.* The action cannot be maintained. It is in the

nature of trover. The property sued for was not in the defendant's possession at the time of the assignment to the plaintiff, but had been seized under an attachment issued in favor of the assignors' creditors, and taken out of the defendant's possession and placed in the custody of the law at the instigation and request of the assignors ; and there being no allegation or proof that the property had been impaired or diminished in value by the defendant while in his possession, the action for the mere taking, whether tortious or not, is not assignable.

Assignment to plaintiff, 23d February, 1860.

Seized under attachment, 13th January, 1860.

At the request of assignors. (*The People* agt. *Tioga Com. Pleas,* 19 *Wend.* 73 ; *McKee* agt. *Judd,* 2 *Kern. R.* 625 ; *Hall* agt. *Robinson,* 2 *Comst.* 293 ; *Gardner* agt. *Adams,* 12 *Wend.* 297 ; *Somner* agt. *Wilt,* 4 *Serg. & Raw.* 19, 28 ; *Willard's Eq.* 462 ; 2 *Story's Eq.* § 1040 ; *Sherman* agt. *Elder,* 24 *N. Y. R.* 622 ; *Stewart* agt. *Martin,* 16 *Verm.* 402 ; *Pierce* agt. *Benjamin,* 14 *Pick.* 356 ; *Prescott* agt. *Wright,* 6 *Id.* 20 ; *Squire* agt. *Hollemback* 9 *Id.* 551 ; *Sherry* agt. *Schuyler,* 2 *Hill* 204 *and note* ; *Higgings* agt. *Whitney,* 24 *Wend.* 379 ; *Otis* agt. *Jones.* 21 *Id.* 394 ; *Plevin* agt. *Henshall,* 10 *Bing. R,* 24 ; *Id.* 25 *E. C. L. R.* 17.)

1. In an action of trover, where the property has been redelivered before suit brought, the party from whom it was taken can recover nothing but nominal damages. (*Sedg. on Dam.* 3 ed. *p.* 518 [492] ; *Murray* agt. *Barling,* 10 *J. R.* 172 ; *Reynolds* agt. *Shuler,* 5 *Cow. R.* 323.)

2. " The only modification that can be said to exist of this rule is, perhaps, in those cases where, intermediate the conversion and the return of the property claimed, special damage has been sustained by the plaintiff, and in such cases the special damage demanded must be distinctly alleged in the declaration." (*Sedg. on Dam.* 3d ed. *p.* 519 [492] ; *Moon* agt. *Raphael,* 2 *Bing. N. C.* 310 ; *Id.* 29, *E. C. L. R.* 345.)

3. "As the law at present stands, there seems no warrant for a distinction between tortious conversions and *bona fide*

takings, except so far as the malice goes to prove a conversion" (*Sedg. on Dam.* 3d ed. *p.* 521 [494].

4. If the action could be maintained at all, the jury should have been instructed, as requested, that the plaintiff was not entitled to recover more than nominal damages. (*Pages* 31, 32, *fols.* 122, 123; *Cases above cited*; *Hopper* agt. *Higbee*, 3 *Zabriskie*, 324.)

*Second.* The assignors, before their assignment to the plaintiff, caused the property to be taken from the defendant under an attachment in favor of their creditors, and the proceeds thereof distributed among them (*Volenti non fit injuria*).

*Third.* The whole transaction took place in New Jersey, and by the laws of that state the plaintiff was not entitled to recover. (*Code of Pro.* § 426; *Hopper* agt. *Higbee*, 3 *Zabriskie*, 324.)

*Fourth.* The judgment should be reversed.

CHARLES MOTT, *attorney and counsel for plaintiff and respondent.*

*First.* The silk was finished December 10, 1859, and was the property of M. B. Stafford & Co. There were then 599 sixteen ounce pounds of it.

The value of it was fixed by Stafford at $4,825, or fifty cents an ounce; and by Thorp, a witness of defendant, at forty-five to fifty cents an ounce, on December 12, 1859, as the market value. A computation will show that the jury found it to be worth forty-seven and a half cents an ounce. The seizure of the silk by defendant on Sunday, December 11, 1859, is both admitted and proved.

On December 12, 1859, a demand was made upon defendant by Stafford for the silk, which the defendant refused to give up.

*Second.* From what has been said, it appears that the cause of action which accrued to Stafford and Mott—for the seizure of the silk by defendant, was a trespass.

This cause of action for the taking and detention of the

silk was assignable, and was duly assigned to plaintiff (*McKee* agt. *Judd*, 2 *Kern.* 622).

*Third.* The exceptions at folios 36–41 were not well taken.

1. The questions were immaterial—some of them palpably so. The immateriality of the others becomes apparent by the answer, folio 14.

2. The questions were put upon cross-examination, before plaintiff rested. A party has no right, before opening his case, to introduce it to the jury by cross-examining his adversary's witness. The proper time to put these inquiries, if they should then be deemed material, was after plaintiff had rested his case, when the defendant had a right to recall the witness for that purpose (1 *Greenleaf on Ev.* § 447, *and cases cited*).

3. If the exclusion of the evidence was error, it did no harm. But the questions were not finally excluded. The admission of the testimony was merely postponed by the court in the exercise of its discretion to a subsequent stage of the case.

*Fourth.* The exception upon the motion to dismiss the complaint, was not well taken. The taking was admitted. The possession, value and assignment, were proved. The ownership was both conceded and proved.

*Fifth.* The question remaining is, what amount of damages plaintiff can recover?

1. The silk was taken on Sunday, December 11, 1859, and has been withheld to the present time.

The two attachments subsequently procured by defendant were quashed.

The other attachment, and the only one not shown to have been set aside, is that of Lane, under which the silk was attached January 31, 1860, nearly two months after the seizure of it by defendant, and sold April 22, 1861, nearly a year and a half after the seizure, at auction, for $1,883.41, and the proceeds paid to the creditors of Stafford & Mott, including defendant.

2. Upon the question of damages, the court charged the jury that, if the verdict should be for plaintiff, plaintiff was

entitled to recover the value of the silk at the time of the taking, after deducting from it the sum which the silk sold for at the sale by the creditors in the attachment suit of Lane, and which was applied in payment and satisfaction to that extent of Stafford & Mott's debts, with interest.

3. The defendant has no cause to complain of the rule of damages.

1. To the time of Lane's attachment, nearly two months after the seizure, the detention was as unlawful as had been the taking.

To that time no legal measure had been adopted which can be pretended to justify the detention.

In any view of the case, plaintiff is entitled to recover, not merely nominal damages for the trespass, as claimed by defendant, but also damages for the loss of the property from the day of the taking, December 11, 1859, to the day of the attachment, January 31, 1860. The proceedings in Lane's attachment suit cannot be held to have any effect at a time when they had no existence.

2. The wrongful taking being proved, plaintiff should recover the market value of the property at the time of the taking, besides interest, unless the defendant is able to show that the goods, or the value of them at the time of the taking, have been restored and accepted.

It is not pretended that the silk was ever restored.

The attachment and subsequent proceedings in Lane's suit do not have the effect of a return and acceptance of the property itself, or the value of it at the time of the seizure upon the question of damages. The measure of damages is the market value of the silk on December 11, 1859. As found by the jury, this amounted to over $4,500. The sale, by virtue of the proceedings in Lane's suit, April 22, 1861, was for only $1,883.41. The whole effect of these proceedings was to apply to the use of Stafford and Mott $1,883.41. But this was not a restoration of the value of the silk on December 11, 1859, but of the value of it on April 22, 1861. Even this was not the market value on that day, but the value at a legal sale in Passaic county, N. J., where there is

no market, and hence no market value for sewing silk by the quantity of 600 pounds. The sum produced at this sale of the silk is proved to be less by several thousands of dollars than the market value of it December 11, 1859.

3. A tortious taker of property must indemnify the injured party for his loss. The measure of the loss in this case is the value of the property at the time of the taking in December, 1859, which is proved to be over $4,500. The only compensation shown is the application, by process of law, to the owner's use of the sum of $1,883.41. But compensation to the extent of $1,800 is not an indemnity for the loss of $4.500. The actual loss still remaining, is the difference between the value of the property in December, 1859, and $1,883.41. (*Blake* agt. *Johnson*, 1 *N. H.* 91 ; *Lamb* agt. *Day*, 8 *Vt.* 407 ; *Pierce* agt. *Benjamin*, 14 *Pick.* 356 ; *Board* agt. *Head*, 3 *Dana, Ky.* 489.)

4. As the application of this sum to the use of Stafford and Mott was by process of law, it may be presumed that it was so applied with their assent. But it was no part of the proceedings in the suit of Lane to furnish an indemnity for the damages occasioned by the wrongful seizure of the silk by defendant, and no consent on their part, or on the part of plaintiff, that the proceedings should have that effect, can be presumed. The parties can be held to have assented only to the act of the law, and the legal proceedings did not restore the silk to the owners, or the value of it at the time of the seizure, but reduced their loss to the extent of $1,883.41 only.

5. The loss having been diminished to the extent of $1,883.41 only, to that extent only should the plaintiff's recovery be diminished.

To that extent only has defendant shown a right to mitigate the claim of this plaintiff for damages.

6. The attachment of the goods by Lane before the assignment of this cause of action, is a matter of no moment, the cause of action having accrued before the attachment. The plaintiff, by the assignment, took the cause of action, subject to the proceedings in Lane's attachment suit, which con-

stitute not a complete, but a partial defense only, and go not in bar of the action but only in mitigation or reduction of plaintiff's damages (*Irish* agt- *Cloyes,* 8 *Vt.* 30).

*Sixth.* The rule of damages laid down by the court was more favorable than defendant was entitled to.

1. The sale and distribution in Lane's suit did not take place till after the commencement of this action.

2. The seizure and detention of the silk by defendant constitute an undisguised trespass, without color of permission or legal right.

For such wanton violation of the owner's rights, and the offensive manner accompanying it, the defendant ought not to be permitted to avail himself of the proceedings in Lane's suit to mitigate the plaintiff's damages at all (*Higgins* agt. *Whitney,* 24 *Wend.* 379).

*Seventh.* The case of *Hopper* agt. *Higbee* (3 *Zabriskie's N. J. Rep.* 342), which was read in evidence, was a very different case from this.

1. In that case the writ issued at the suit of the wrong doer ; in this, at the suit of a third person—Lane.

The property, when attached, was taken, in that case, from the hands of the wrong doer; the defendant is shown to have parted with the possession of the property in question nearly two month's before Lane's attachment of it.

2. In that case, an offer was made, on behalf of defendant, to prove the application, by operation of law, to the owner's use of the property taken.

The plaintiff objected. The court sustained the objection, and the whole bill of exceptions is on that, except one technical point.

The question in that case, therefore, was as to the admissibility of the evidence only, not as to the effect of it; and the question as to the extent of the mitigation of the plaintiff's damages on account of such application of the property, was not in that case at all.

In this case, the evidence was admitted, and the question is as to the effect to be given to it; in other words, to

Ward agt. Benson.

what extent the plaintiff's damages should be reduced on account of it.

*Eighth.* The judgment and order appealed from should be affirmed.

*By the court,* CLERKE, J. The property, for the conversion of which this action is brought, was wrongfully taken by the defendant on the 11th of December, 1859. Attachments were issued against it while in the possession of the defendant, by creditors of the owners, on the 31st January, 1860, under which it was sold April 22, 1861, for $1,883.41. On the 23d February, 1860, the owners made a general assignment to the plaintiff for the benefit of their creditors.

At the trial, the judge was requested to charge the jury, that the property mentioned in the complaint, having been taken from the defendant by process of law in New Jersey, before the owners transferred the same by their assignment to the plaintiff, the latter is not entitled to recover the property or the value thereof. The judge was also requested to charge, that the plaintiff had failed to prove more than nominal damages. He refused to charge as requested ; but he did charge that the taking of the property by the sheriff was a defense to the extent of $1,883.41, being the proceeds of the sale under the attachment, which were applied to pay the original owners debts. He was clearly right.

If the proposition of the defendant's counsel is tenable, if the property was, at the time of the wrongful taking, worth ten times the amount which it brought at the sale under the attachment, the wronged, and not the wrongful party, must suffer the consequences of the depreciation. The wronged, instead of the wrong doer, should suffer, according to this proposition, the direct consequences of the wrong. At the time of the conversion, and at any time between the conversion and the sale, it is possible that the state of the market might have enabled the owner to sell the property for a much larger sum than it brought at the sale under the attachment. But this he would have been prevented from doing by the unjustifiable act of the defendant. The judge properly charged,

therefore, that the jury should determine, from the evidence, what was the actual value of the property at the time of the taking ; and, having ascertained this, he directed them, if they should find for the plaintiff, to deduct from this ascertained value, at the time of the taking, the amount which it produced at the sale. The other exceptions and objections of defendant's counsel, are equally untenable.

The judgment should be affirmed, with costs.