## SUPREME COURT.

### CHAUNCEY SMITH agt. ABNER REEVES.

The defendant, in an action for the *conversion of personal property*, may set up in *mitigation of damages*, the amount of a chattel mortgage given by the plaintiff upon the property, which was purchased by the defendant *subsequent to the conversion*.

There is no rule of law which prevents one who has unlawfully taken personal property, from purchasing subsequently, a mortgage or other lien upon it, or even buying the property itself.

Where the defendant in an action for the conversion of personal property, and subsequent to such conversion, and before the commencement of the suit, purchases a prior *judgment and levy* upon the property, under an execution against the plaintiff, such judgment and levy is a *bar* to the plaintiff's action.

The defendant in an execution, with whom property is left after levy, is the mere servant or agent of the officer, and cannot sue for the conversion of, or injury to, the property seized. The property is in the custody of the law.

*Jefferson Special Term, December*, 1866.

DECISION overruling demurrer.

This action was brought by the plaintiff against the defendant for the conversion of personal property, alleged to have been taken from the plaintiff's possession 30th March, 1866. The defendant in his fourth defence, alleged that the plaintiff, on the 12th day of December, 1865, to secure a debt due from him to Gibbs & Steel, executed and delivered to them his promissory note for the sum of $99.82, and as collateral security, gave them a chattel mortgage on the property mentioned in the complaint, which mortgage and note were afterwards assigned to the defendant; such assignment was not made till after the alleged conversion. The mortgage was duly filed, to make it a valid lien on the property. The defendant further alleged that the plaintiff had paid no part of the note, and that the whole amount thereof was due and payable.

In his fifth defense, the defendant alleged the recovery of a judgment against the plaintiff by one Samuel Alverson, for $868.97, which was assigned to Anson B. Moore, and afterwards, and in February, 1866, a levy was made on the property in question in this suit, by a deputy of the sheriff

of Jefferson county, subject to the mortgage mentioned in the defendant's fourth defense; and afterwards, and before the commencement of this action, but subsequent to the conversion, the said judgment, execution and levy, were duly assigned to the defendant. The defendant also alleged that the plaintiff was insolvent, and had no other property to satisfy said debt and execution.

The plaintiff demurred to the fourth and fifth defenses, on the grounds that said defenses did not state facts constituting a counter-claim; that they were neither a legal or equitable defense to the complaint in this action.

L. J. DORWIN, *for plaintiff.* ᐧ

I. In an action of trover, the conversion is the gist of the action. Where the property rightfully came to the possession of the defendant, a conversion must be proved. A demand and refusal was evidence of a conversion, though not in itself a conversion. But the wrongful taking of the property, is in itself a conversion, and hence such taking is the gist of the action. (*Espinasse Nisi Prius, vol.* 2, *p.* 595; *Brown* agt. *Sax,* 7 *Cow.* 95.)

II. Under the former practice, everything by way of a defense could be given under the plea of general issue, except a release and statute of limitations. Special pleas were allowed, but were not necessary. These pleas admitted the taking, but justified under some legal or equitable right, but which right existed at the time of the taking. (*See Espinasse N. P.; Bull's N. P.; Selwin's N. P.; Leigh's N. P.)*

III. *Leigh's Nisi Prius,* 1497. The party claiming a lien must have possession of the goods, and if he obtains possession by fraud or misrepresentation, he cannot enforce his claim of lien, though if the goods had come rightfully into his possession he might have retained them; and cites *Taylor* agt. *Robinson* (8 *Taunt.* 648); *Lempriere* agt. *Paseley* (2 *T. R.* 485); *Madden* agt. *Kempster* (1 *Camp.* 12).

This is in a case where the lien exists at the time of the

Smith agt. Reeves.

taking. Yet if the taking is tortious, it is no defense, legal or equitable.

Moore & McCartin, *for defendant.*

I. The plaintiff had mortgaged the property mentioned in his complaint to Gibbs & Steel, as alleged in the fourth defense, and the mortgagor was in default at the time of the commencement of this action; hence the title of the property was not in plaintiff, but in Gibbs & Steel. They had the right to take possession of the property at any time, and sell the same, and apply the proceeds in satisfaction of their claim. The plaintiff could not maintain trover as against Gibbs & Steel, for taking the property by virtue of their mortgage; nor can he assert that he was the owner of the property as against the defendant, their assignee, while in default in payment of the G. & S. mortgage.

In any event the plaintiff can only recover the value of the property, less the amount due on the G. & S. mortgage. The fourth defense should be upheld as a valid defense, in mitigation of damages.

II. The sheriff having levied upon the property in question before the conversion, by virtue of an execution issued upon a judgment recovered against the plaintiff, and such judgment, execution and levy, having been duly asssigned to the defendant, it follows that the property at the time of the conversion was in the custody of the law, and the defendant in that execution (the plaintiff here) had no right of possession which entitles him to maintain this action. The property having been left with the plaintiff after the levy, he was the mere servant or agent of the officer making such levy, and cannot sue for the conversion of, or injury to, the property seized. (*Rew* agt. *Barber*, 3 *Cow.* 272; *Miller* agt. *Adsit*, 16 *Wend.* 335.)

The fifth defense is a valid defense, and is a complete bar to the plaintiff's right of recovery.

Mullin, J. The complaint is in trover, for certain articles

of personal property unlawfully taken and converted by defendant to his own use.

The defendant in his fourth defense, alleges that the plaintiff on the 12th December, 1865, to secure a debt due from him to Gibbs & Steel, executed and delivered to them his promissory note for the sum of $99.82, and as collatteral security gave them a chattel mortgage on the property mentioned in the complaint, which mortgage and note were afterwards assigned to the defendant. The mortgage was duly filed, to make it a valid lien on the said property. That plaintiff has not paid said note or any part of it, although the whole amount is now due and payable. The defendant alleges in his answer, that he had purchased the property of plaintiff, upon the representation by plaintiff that it was unincumbered, whereas it was incumbered by virtue of the mortgage in question. Why this allegation is made in this answer, I am unable to comprehend, as it has no manner of connection with the mortgage, unless it was done to show why the defendant acquired the mortgage. If defendant had purchased the property of plaintiff, that of itself would seem to be a sufficient defense. But it was not alleged in that view. The question then is, whether the fact that the defendant was the owner of a mortgage which was a valid lien on the property in question, is a defense to this action, either as a bar or by way of mitigation of damages.

The mortgage was given in December, 1865. This conversion is alleged in the complaint to have occurred the last of March, 1866. The defendant acquired title to the mortgage in April, 1866, and after the conversion of the property.

If at the time of the alleged conversion, the last of March, the debt for which the mortgage was given to secure, had become due, the plaintiff could not maintain the action. The legal title in that event would have been in Gibbs & Steele. But the plaintiff being in possession, might maintain an action by reason of his possession merely, against a wrong-doer, and could in that action recover the value of the property. But the defendant does not show when the

Smith agt. Reeves.

debt became due, except that he avers that it is *now* (that is, at the time of putting in the answer) due. That is not equivalent to an averment that it was due on any day prior to that time. As it does not appear that the money was due at the the time of the conversion, by the express terms of the mortgage, it remains to inquire whether it becomes forfeited by reason of the other conditions, to wit: that if the mortgagees deemed themselves insecure, they might take possession, sell, &c. Whatever the parties' rights might be under this branch of the condition, it is not averred that either the mortgagees, or the defendant as assignee, entered and took the property by virtue of it, so that the defendant is not entitled to any benefit under it as a bar to this action.

The question then comes to this: can a tort-feasor after the commission of the wrong, protect himself against the claim of the injured party, for damages sustained by reason of such wrong, by purchasing the property from the true owner, or acquiring a valid lien thereon? The conversion is the gist of the action, and most clearly there is no method by which the defendant, by an act of his own, can defeat the right of action. The plaintiff must be entitled, in any contingency, to the damage he has actually sustained. Can the defendant acquire liens upon, or title to the property, and set up such title or lien in reduction of damages?

By the fourth defense in the answer, it appears that when it was put in, the defendant actually owned the property in question, subject to the plaintiff's equity of redemption. If the plaintiff recovers of defendant, he must immediately pay over to the defendant the amount due on the mortgage, or he may sue for and recover it, as money had and received to his use. It cannot be necessary to resort to this circuitous method of obtaining redress. The plaintiff is entitled to recover the value of all the property, less the amount due on the mortgage. The fourth defense must be treated, therefore, as a defense in mitigation of damages.

The plaintiff's counsel has referred me to several cases in support of the proposition that a wrong-doer, who *mala fide* acquires a lien upon property, cannot assert it by way of

defense against the party injured, in an action for the wrong.
The first of these cases is *Taylor* agt. *Robinson* (8 *Taunt.*
648). In that case the defendants were brokers, and pur-
chased property of Duncan & Co., for one McMichael, which
was to remain on D. & Co.'s premises free of charge for one
month, and if it remained longer then McM. was to pay for
the use of the premises. Part of the property was shipped
to McM. by his direction, and after that, proceedings in
bankruptcy were instituted against McM. Subsequent
thereto, the defendants took possession of the residue of the
property, and removed it to their own premises, and there-
after claimed to hold it by virtue of a lien thereon for their
commissions as factors. The question was, whether the
defendants had such a possession as entitled them to a lien,
and it was held that they had not. They never had pos-
session, except such as they acquired by the wrongful taking,
and the court held, that a lien cannot be obtained by wrong.

*Madden* agt. *Kempster* (1 *Comp.* 12), is another application
of the same principle. There the defendant had been agent
for one Hart, who was an officer in the marines, and with
whom Hart had kept an account. For some reason Hart
transferred his account to the plaintiff, and after such trans-
fer the defendant went to the plaintiff's agent in London,
and represented that Hart was owing him a balance of £60,
and the agent gave defendant a check for the amount on
plaintiff's bankers, which was paid. It was not true that
Hart owed defendant any such balance. When the plain-
tiff demanded the money thus wrongfully obtained, defend-
ant claimed to hold the money on the ground that defendant
had accepted a bill drawn by Hart, and that he had the
right to be indemnified against such acceptance. The court
held, that having obtained the money by fraud, he could not,
therefore, set up a lien to which he might otherwise have
been entitled.

*Lempriere et al.* agt *Paseley* (2 *Term,* 485), is to the same
effect. In that case the defendant loaned one Syedes money,
and to secure it took an assignment of fifty tons of brazeletto
wood about to be shipped to Syedes, and an agreement to

transfer to defendant the bills of lading when received, as further security.   The wood was shipped, and bills of lading sent to S., who became bankrupt, and afterwards transferred the bill of lading to defendant, and on the arrival of the vessel defendant obtained possession of the property from the captain, on payment of freight and charges, ; and plaintiffs, as assignees of Syedes in bankruptcy, brought this action to recover the wood, without tender of the freight, &c.   The plaintiffs had a verdict.   An order to show cause why it should not be set aside and a new trial granted, and the court set aside the verdict and granted a new trial.   It was held that the assignment of the wood and agreement to transfer the bill of lading, operated as an equitable assignment, and was, therefore, operative against the assignees in bankruptcy.   ASHURST, J., says in delivering the opinion of the court, that if defendant is to be considered as a wrongdoer, the plaintiffs would have no occasion to tender him an indemnification for expenses incurred by him in order to obtain a wrongful possession.   But as it was held that the defendant acquired possession rightfully, he was entitled to hold until the debt, for the security of which the property was transferred, was paid.

None of these cases touch the case before me.   Although the defendant acquired the possession tortiously, yet by the purchase of the mortgage he acquired a lien upon the property in question; and at the time of answering, he had become legal owner of the mortgaged property.   All that was left in the plaintiff was a mere equity of redemption. It is not the case of illegally acquiring title to property by means of the discharge of a lien thereon in favor of the person who had possession, but it is the case of a wrong-doer acquiring title after the tortious act to the property converted or injured.

Suppose A. to have hired the horse of B. for a month, and during the month C. unlawfully takes the horse from A., and converts it to his own use.   A. may maintain an action for this conversion, and would be entitled to recover the value of the horse as damages.   But suppose before answer C.

purchases the horse of B., and thereby becomes owner. Could A. recover the full value of the horse? It seems to me he could not. When A. recovers the damages actually sustained by him by reason of the conversion, it is all that he is entitled to. But if A. has a lien upon a horse for his keep, or for any other lawful cause, and B. goes to A., and without right takes the horse, paying the lien, he is not at liberty to protect his wrongful possession through the lien. He paid the money in his own wrong, for the very purpose of enabling him to prefect the wrong, and the law will not aid him in enforcing it.

But in the case supposed, it is competent for one having the lien to transfer the horse subject to the lien, and the person receiving it may enforce it, and the owner cannot get his horse until the lien is discharged. In the one case there is no conversion, in the other there is. In the one case the receiver takes a transfer of the lien, in the other he takes the animal regardless of the rights of the owner, and pays the lien only because he could not perfect the wrong without it.

There is no rule of law that I know, which prevents one who has unlawfully taken personal property, from purchasing subsequently a mortgage or other lien upon, or even buying the property itself. Such a purchase does not impair the rights of the injured party, while leaving unrestricted the right to purchase and sell all kinds of property which is by law the subject of purchase and sale. For these reasons, I think the fourth defense is a valid one in mitigation of damages.

In the fifth defense the defendant alleges the recovery of a judgment against the plaintfff by one Samuel Alverson, for $868.97, which was assigned to Anson B. Moore, and afterwards, and in February, 1866, a levy was made on the property in question in this suit, by a deputy of the sheriff, subject to the mortgage mentioned in the fourth defense, and afterwards, and before the commencement of this suit, the said judgment and levy were assigned to the defendant, and the plaintiff is insolvent, and has no other property out of which said debt can be collected.

Assuming, as we must, these facts to be true, it follows that the property at the time of the conversion (the 30th March), was in the custody of the. law, and the defendant in that execution (the plaintiff in this action), had no present right of possession, which entitles him to maintain this action. The defendant in an execution, with whom property is left after levy, is the mere servant or agent of the officer, and cannot sue for the conversion of, or injury to, the property seized. *Rew* agt. *Barber* (3 *Cow.* 272); *Miller* agt. *Adsit* (16 *Wend.* 335), and cases cited in opinion of MASON, Senator. This answer then is a bar to the plaintiff's right of action.

I must, therefore, order judgment for the defendant on the demurrer, but with leave to the plaintiff to withdraw the demurrer to the fifth answer on payment of costs.