52  237
123a  67

LYON, assignee, &c. *vs.* YATES and DISSEL.

After an attachment, under which goods have been siezed, has been set aside as irregular, it affords no shield or protection to the plaintiffs, for such taking. The moment it is set aside, they stand as though no process had ever been issued, and become trespassers *ab initio*.

Having taken the property as trespassers, they cannot, in an action against them for the tort, show that they subsequently caused it to be levied upon, by virtue of a valid execution in their favor.

Where property has been tortiously taken, but returned, and the return has been accepted, and the property retained by the owner, before action brought, the return may be given in evidence in mitigation of damages.

A party who takes property wrongfully, and afterwards undertakes to subject it to an execution in his favor, against the owner, stands in the same situation as a tortious taker who returns the property taken. He cannot compel the owner to accept such an appropriation of his property after a wrongful conversion. The owner may, in such case, stand upon the original wrong, and claim the full value of the property.

THIS action was brought by the plaintiff as assignee of David and William Welch, under a general assignment for the benefit of creditors, to recover for the alleged conversion of a portion of the assigned property. The defendants justified as creditors, under an attachment, judgment and execution against the Welches, averring that the assignment was fraudulent as to creditors. It appeared on the trial that on the 12th day of January, 1866, an action was commenced in the Supreme Court in favor of the defendants, against the Welches; that on the 22d day of January, 1867, an attachment was obtained in that action and levied on the property in controversy; that on the 27th day of February, 1867, the attachment was set aside at special term. The defendants offered to show that the attachment was vacated, upon affidavits on the part of the Welches disproving a fraudulent disposition of the property; which evidence was excluded. Also that the defendants were creditors of the Welches, and that the assignment to the plaintiff was fraudulent, which was excluded; also that prior to the commencement of

this action the defendants held the property in controversy under an execution against the Welches, which was excluded.

The court held that the defendants could not justify under their attachment, on two grounds:

1st. That it was void for want of jurisdiction when granted, for the insufficiency of the affidavits on which it was granted.

2d. If not originally void, that it became so when subsequently vacated, and offered no protection to acts done under it prior to its being set aside; and that when the same was vacated, the defendants became trespassers *ab initio*.

The affidavits on which the attachment was obtained were made by Owen K. Klink and Theodore Dissell. Dissell's affidavit was simply a verified complaint. Klink's affidavit contained the allegations of fraud on the part of the Welches. The court held Klink's affidavit to be bad because it was verified before a notary public of Wayne county, when its venue was laid in Onondaga county.

The defendants requested the court to hold and decide that said warrant of attachment was a justification for all acts done under it previous to the time it was set aside, and if at the time of the levy of the attachment upon the property described in the complaint the possession and title of the plaintiff was of a character fraudulent as to creditors, then the plaintiff is not entitled to recover, and the defendants requested to go to the jury upon the question whether or not the title of the plaintiff to said property was fraudulent as to the defendants and creditors of David and William H. Welch. The court refused to hold and rule as requested by the defendants, and the defendants excepted. The court thereupon directed the jury to render a verdict for the plaintiff for the value of the property taken by the defendants. To which direction and ruling

the defendants duly excepted. The jury, thereupon, rendered a verdict for the plaintiff for the sum of $630.

From the judgment entered on such verdict, the defendants appealed.

*Wm. J. Wallace,* for the appellants. I. The attachment was not void for want of jurisdiction in the officer granting it. 1. No question of jurisdiction can arise in the issuing of an attachment, under the Code, where the action in which it issues is already commenced. "From the time of the service of a summons in a civil action, the court is deemed to have acquired jurisdiction, and to have control of all the subsequent proceedings." (*Code*, § 139.) Under the Code the sufficiency of the affidavits on which an attachment issues is no longer a jurisdictional question. (*Matter of Griswold,* 13 *Barb.* 412. 13 *Har.* 348, 358.) 2. If jurisdiction could depend on the affidavits it could on the undertaking which is required; for the undertaking is as essential as the affidavit. Yet an undertaking totally failing to comply with the statute, may be amended. (*Kissam* v. *Marshall,* 10 *Abb.* 424.) And the affidavits upon an attachment, when bad, may be amended. It would be an anomaly in legal principles if a court could obviate its want of jurisdiction by amendments in the very case where it had no legal cognizance of the case at all, by reason of its want of jurisdiction.

II. The court below erred in admitting in evidence the order vacating the attachment. 1. The attachment was vacated on the motion of the defendants in the action in which it issued. The plaintiff was in no manner affected by that motion. His rights were not impaired by the issuing of the attachment; neither were they strengthened by its discharge. The plaintiff could not have moved to vacate. (4 *Abb.* 396.) Neither could any party move to vacate but the party against whom it issued. (13 *Barb.* 412. 46 *id.* 43.) If the plaintiff could not have moved

to vacate, he can claim no advantage, because it was vacated on the motion of another. At the time the property was taken, it was rightfully taken if the plaintiff's title was fraudulent, and the only question he could litigate was that of the title. He acquired no new rights by the act of his assignees subsequent to the assignment, in procuring the vacation of the attachment. (*Denio J. in Hall* v. *Stryker*, 27 *N. Y. Rep.* 602.)

III. The attachment was a protection to all acting under it, for all acts done prior to its vacation. 1. The attachment was process issued by the court granting the order, not the act of the party. It was upon a judicial determination that the party was entitled to the process. The subsequent discharge of the attachment was equivalent to a reversal for error. The court may have erred in deciding that a notary public had power to take an affidavit out of his county, or the error may have been in holding the affidavit of Dissell to have been sufficient to authorize the process. Whether the error was gross or trivial, the principle is the same, that where it arose in the exercise of a judicial judgment in a case where the court has jurisdiction to decide, both the court who decides and the party who acts upon the decision are protected for all acts done up to the time when the decision is reversed or set aside. (*Landt* v. *Hilts*, 19 *Barb.* 283. 1 *Denio*, 537. 3 *Sandf.* 328.) The case is unlike that of process subsequently set aside which was issued by the party. In such case, he acts at his peril. "There is an important difference between erroneous process and irregular process. The first is the act of the court, and even after it is set aside or reversed, whatever was done under it while in force, may be justified by the party. But irregular process is the act of the party, and when once set aside, is considered as having been a nullity from the beginning." (*Blanchard* v. *Goss*, 2 *New Hamp. R.* 491.) 2. The case of *Kerr* v. *Mount*, (28 *N. Y. Rep.* 659,) which is cited as holding to the contrary

Lyon *v.* Yates.

of the foregoing propositions, should not be regarded as authoritative in this case. That case was one in which the court granting the process had no jurisdiction. In such a case the attachment was a nullity from the beginning, and parties acting under it were trespassers, whether it had been set aside or not. It was, therefore, unnecessary to decide whether or not the setting aside of the attachment rendered the party a trespasser for acts done while it was in force; and every case cited in the opinions upon that question is one in which the process was issued by the party, and not by the court.

IV. If the foregoing propositions are true, then the court erred in excluding evidence on the part of the defendants to show the plaintiff's title fraudulent as to creditors.

V. The evidence of the execution subsequently levied should have been received.

*J. Welling*, for the respondent. I. The first exception of the defendants was not well taken. The evidence offered was irrelevant and did not attempt to establish a justification for the conversion proved by the plaintiffs. 1. The action was trespass for taking and carrying away personal property. "In an action of trespass, *de bonis asportatis*, it is not competent for the defendant to show property in a stranger to excuse the trespass and justify the taking. If a person has the peaceable possession of a chattel, this gives him a right as against every body but the rightful owner." (*Per curiam, Cook* v. *Howard*, 13 *John.* 284. 11 *id.* 529.) But a party "showing some authority or right derived from the owner can justify the taking." (*Demick* v. *Chapman*, 11 *John.* 132.) 2. In this case there was no authority or right derived from the plaintiff's assignor, at the time of the wrongful taking, viz. the 22d day of January, 1867, and the judgment under which the defendant claimed to raise the question of title

out of the plaintiff, was not rendered till the 27th day of February, 1867. The plaintiff's cause of action was complete in all respects on the 22d of January, 1867, and could not be affected or discharged by the subsequent judgment against his assignor. The taking was not under the judgment, and therefore cannot be justified by it. 3. The defendants were simple contract creditors. (*See authorities cited under subdivision three of second point.*) They could not therefore raise or litigate the *bona fides* of the plaintiffs' title. (*Reubens* v. *Joel,* 13 *N. Y. Rep.* 488.)

II. The defendants' second exception is not well taken. 1. The attachment could be set aside only upon the motion of the defendants therein, and could not be attacked and reviewed and set aside in a collateral proceeding. (*In the matter of Griswold,* 13 *Barb.* 412.) 2. "When the *ca. sa.* was set aside for irregularity, it ceased to be a justification to the parties guilty of the irregularity; as to them it is void and as if it had never existed. The arrest, therefore, by relation, became void and without authority, and the action for trespass was the proper action." (*Per curiam, Chapman* v. *Dyett,* 11 *Wend.* 32.) 3. The evidence made by the orders setting aside the attachment and the order of the general term affirming that order, was merely cumulative; it had been proved that the attachment was void, and no justification for the wrongful taking thereby, as the officer issuing such attachment had no legal proof before him showing or tending to show a fraudulent disposition of the defendants' property. The paper purporting to do so, being a nullity as an affidavit, there was a total want of evidence upon a material point; such officer was not called upon for the exercise of his judgment thereupon, and failed to acquire jurisdiction to make the warrant. (*Conklin* v. *Dutcher,* 5 *How. Pr.* 386, *citing* 4 *Hill,* 602. 20 *Wend.* 77. *Exparte Haynes,* 18 *id.* 611. *Cadwell* v. *Colgate,* 7 *Barb.* 253.) As to the nullity of the so called affidavit of Owen K. Klinck, see *Lane* v. *Morse,* (6 *How. Pr.* 394; *Cook* v.

*Staats,* 18 *Barb.* 407; 1 *Barb. Ch. Pr.* 601; *Sandland* v. *Adams,* 2 *How. Pr.* 127; *Ladow* v. *Groom,* 1 *Denio,* 429, 431.)

III. The evidence offered by the defendants, of the order setting aside the attachment, was irrelevant, and their exception to its exclusion is not well taken. (*See subdivision* 1 *of 2d point.*)

IV. The defendants' offer to show that the property, after its wrongful taking and removal from the plaintiff's possession, had been levied on while in the custody of the sheriff under the attachment, did not tend to show a justification, and was not admissible in mitigation of damages. The defendants, by their directions to the sheriff to take the property and remove it under the void attachment, made him their servant or agent, and his possession of the property was the wrongful possession of tort feasors, i. e. the defendants herein. When property is wrongfully taken, the subsequent appropriation of it by a sale under an execution in favor of the wrongdoer, will not save the parties from answering in damages to the full value of the property. (*Otis* v. *Jones,* 21 *Wend.* 394. *Hanmer* v. *Wilsey,* 17 *id.* 91. *Higgins* v. *Whitney,* 24 *id.* 380. *McMichael* v. *Mason,* 13 *Penn. Rep.* 114. *Gillard* v. *Brittan,* 8 *Mees. & Welsb.* 575, *cited in Sedwick on Dam.* 537, *marginal. Keene* v. *Dilke,* 4 *Excheq.* 388.)

The preceding points and authorities embrace and vindicate the rulings and decisions of the court, after the close of the evidence.

VI. There being no dispute as to the facts, there was no question for the jury, and they were properly directed to find a verdict for the plaintiff for the full value of the property taken. (*See authorities cited under 4th point.*)

*By the Court,* JOHNSON, J. The attachment, under which the defendants had the goods seized in the first instance, having been set aside as irregular, it afforded them no shield or protection whatever for such taking. The mo-

ment it was set aside, they stood as though no process had ever been issued, and became trespassers *ab initio*. (*Kerr* v. *Mount*, 28 *N. Y. Rep.* 659.)

Having taken the property as trespassers, they could not in an action against them for the tort, show that subsequently they had caused it to be levied upon by virtue of a valid execution in their own favor. This is well settled. (*Otis* v. *Jones*, 21 *Wend.* 394. *Hanmer* v. *Wilsey*, 17 *id.* 91. *Higgins* v. *Whitney*, 24 *id.* 379. *Sedgw. on Dam.* 536.) The evidence for that purpose offered, was therefore properly excluded.

Where property has been tortiously taken, but returned, and the return has been accepted, and the property retained by the owner, before action brought, the return may be given in evidence in mitigation of damages. But this is no such case. The owner may refuse to accept property returned by the tortious taker, and the latter cannot compel him to accept it, or retain it. A party who takes property wrongfully, and afterwards undertakes to subject it to an execution, in his favor, against the owner, stands in the same situation. He cannot compel the owner to accept such an appropriation of his property after a wrongful conversion.

The owner may in such case stand upon the original wrong, and claim the full value of the property.

The disposition which a wrongdoer makes of the property he has converted without the assent of the owner cannot help him, in any way, in an action for the tortious taking. There was no dispute about the facts, and the verdict was properly ordered by the court. The judgment is right, and must be affirmed.

. [MONROE GENERAL TERM, December 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]