# N. Y. SUPERIOR COURT.

LOUISA DONAI WEHLE, plaintiff and respondent, agt. HENRY
L. BUTLER, JONATHAN J. BROOME and OLIVER M. CLAPP,
defendants and appellants.

*Interest* on the value of goods at the time of the conversion, is no more in the dis-
cretion of the Jury than the value; it is as necessary a part of complete in-
demnity as the value itself.

In an action of trespass for wrongfully taking and carrying away plaintiff's goods
and breaking up his business, the *attachments* under which the goods were taken,
having been set aside for irregularity, they afford no shield or protection what-
ever for such taking to the creditors who procured them to be issued. Such
protection extends only to the officer while acting under them in the discharge of
his public duty.

Where all the attaching creditors actively participated in the seizure and removal
of plaintiff's entire stock at one and the same time, without separating their
respective proceedings, and there being no evidence from which the extent of
the separate liability of any one of them could be ascertained, they must be deemed,
for the purposes of the case, to have been joint tort feasors, and as such their
liability is joint and several, and enforceable accordingly at plaintiff's
election.

Where a portion of the attaching creditors only, were sued in this action, the bare
fact of the existence and simultaneous, but fruitless levy of the attachments
issued by the other creditors, cannot be made available to the defendants in this
action in any aspect of the case.

All the attaching creditors having been jointly concerned in the commission of a
wrong, and being jointly and severally liable therefor at plaintiff's election, they
were all alike incapacitated from making a subsequent *legal* appropriation of
plaintiff's property, either for their joint account, or for account of any one of
their number, without plaintiff's assent.

If evidence of a subsequent legal appropriation to plaintiff's use was competent,
it cannot be received on the trial in this action, not even in mitigation of
damages, without being *pleaded*. (See *Wehle* agt. *Haviland*, 42 *How.*, 399.)

*General Term, November*, 1871.

*Before* BARBOUR, *Ch. J.*, MONELL *and* FREEDMAN, *JJ.*

APPEAL from judgment entered upon the verdict of a jury.
The plaintiff in her complaint, alleged the following cause
of action :

*First.*—That she is and was a merchant doing business in the city of New York, and by her industry and attention had built up a lucrative and profitable business.

*Second.*—That said defendants are copartners, doing business in the city of New York.

*Third.*—That on or about the 8th day of December, 1869, said defendants made application to one of the justices of the Marine Court of the City of New York for attachments against the property of this plaintiff, and by means of dividing and cutting up an alleged and entire demand against this plaintiff, and by means of a false and fraudulent affidavit, induced the said justice to grant several attachments on said claims so divided and cut up, and with said attachments said defendants proceeded to the place of business of this plaintiff, and about 12 o'clock, midnight, awoke this plaintiff and demanded entrance to her store, in said city of New York, and upon gaining admission, seized and in a wasteful and reckless manner, carried away all the goods in said store, of the value of about twelve thousand dollars.

That by means of the said attachments so fraudulently obtained, said defendants, unlawfully, wilfully and maliciously took from said plaintiff her whole stock of goods, consisting of cloth, silks, dress goods, gloves, fancy goods, and such goods as are usually kept in a fancy dry goods store, in the city of New York, the property of this plaintiff, of the value of about twelve thousand dollars, and still unlawfully detained the same to the damage of this plaintiff in the further sum of five thousand dollars, and broke up and entirely destroyed the business of the plaintiff.

*Fourth.*—Said plaintiff further alleges and avers, that afterwards and on or about the 10th day of December, 1869, and on the return day of said attachments this plaintiff at great expense, in the employment of counsel, to wit, five hundred dollars, appeared in the said Marine Court, and made a motion that said attachments be vacated, set aside and discharged, and the same were vacated and discharged;

a copy of the said order vacating, setting aside and discharging said attachments is hereto annexed and made a part of this complaint.

*Fifth.*—That by reason of the aforesaid fraudulent and unlawful taking and detaining of said property and the breaking up and destroying the business of this plaintiff, and the expenses she has incurred in getting said unlawful and fraudulent attachments vacated, set aside and discharged, she has suffered damage to the amount of fifteen thousand dollars, for which said sum she demands judgment, with cost of this action.

The answer of the defendants contained a general denial.

Upon the trial it appeared that on the 8th day of December, 1869, six warrants of attachment were issued by one of the justices of the marine court at the instance of the defendants, Butler, Broome & Clapp, as alleged creditors of the plaintiff, and seven other warrants in favor of Spelman & Sons, and Haviland, Lindsley & Co., other alleged creditors of the plaintiff, against the property of the said plaintiff; that on the same day the thirteen warrants were received by the sheriff, that the latter accompanied by the defendant Henry L. Butler, of defendants' firm, Mr. Haviland and Mr. Lindsley, of the firm of Haviland, Lindsley & Co., Mr. Holbrook representing the firm of J. B. Spelman & Sons, and other parties, proceeded to plaintiff's store after ten o'clock in the evening of the same day, served all the attachments at the same time, seized the entire contents of plaintiff's store and caused them to be carted in the middle of the night to a stable in 31st street, whereby plaintiff's business was completely broken up. In reply to plaintiff's remonstrances against the removal of the goods the sheriff assured her that he had plenty of bonds, and that the attachment creditors were responsible parties. All the parties named assisted in the removal of the goods to the stable, Butler, Holbrook and Lindsley following the carts to see that nothing got lost. The goods were subsequently taken from the stable to de-

fendants' store on Broadway, where they remained nominally in custody of the sheriff for about six weeks. It also appeared that the sheriff made a separate return to each of the six attachments issued at the instance of the defendants, certifying upon the back of each of them that by virtue of the within attachment, he did attach and take into his custody the goods and chattels of the said Wehle and made an inventory of the same. The inventory reads as follows: "Inventory of property attached December 8th, 1869. Dress goods, domestic goods, flannels, fixtures, &c., value at about $1,000." A similar return was made to each of the other attachments, issued in favor of the other creditors.

On the 13th day of December, 1869, on a motion to vacate founded on the attachments, the return of the sheriff thereon, and the affidavits on which the attachments were issued, the six attachments obtained by the defendants were vacated and set aside by order of the marine court, with costs to the defendant named therein (Wehle).

At the same time, the other seven attachments in favor of the other creditors, were vacated, with costs for irregularity.

Plaintiff thereupon demanded a return of her goods, but defendant refused, and the goods were finally sold on the 28th of January, 1870, at sheriff's sale under some execution which the defendants issued. Defendant's counsel offered to prove (it being assumed and agreed that the witness and the papers were in court), " that after these actions had terminated in the marine court, and before the commencement of this action, actions were commenced in the court of common pleas, between the same parties, and against the property of said Louisa Donai Wehle, duly and regularly issued therein, on the ground that the defendant in that suit (the plaintiff in this suit), had disposed of property to defraud creditors; and that thereunder the goods in question were seized by the sheriff; that a motion was made to vacate these attachments and denied, and that the said attachments stand to-day," which was objected to, except the fact that the actions in

the marine court had terminated, which was admitted by both sides.

The court excluded evidence, and defendants excepted.

The value of the goods taken was variously estimated from $2,000 to $10,000, and on that point, the testimony was highly contradictory. Defendants showed, among other things, that at the sheriff's sale, the goods brought $2,187 94. The plaintiff in rebuttal, recalled a witness who had personal knowledge of the condition and value of the goods in question, and put the following question :

Q. "What would the goods that you have on this list sheriff's list) sell for, in your store, at retail?"

The defendants objected, but the court admitted the question, and defendants excepted.

At the close of the testimony on both sides, defendants' counsel asked the court to direct a verdict for the defendants.

The court declined, and defendants excepted.

The court charged the jury, that the only question for them to consider was, the value of goods taken from the plaintiff under defendants' attachments, and that should be the fair retail market value of the goods on the 8th day of December, 1869, with interest to present day.

Defendants excepted to that part of the charge wherein the court instructed the jury that the only question for them to consider was, as to the value of the goods.

The jury rendered a verdict for the plaintiff for $4,950. Defendants moved for a new trial upon the minutes of the court, which motion was denied, and defendants excepted.

Judgment was entered upon the verdict in favor of the plaintiff for $5,287 44, and from that the defendants appealed.

C. BAINBRIDGE SMITH, *for appellants.*
CHARLES WEHLE, *for respondent.*

*By the court,* FREEDMAN, *J.*—The appeal being from the judgment merely, the only questions open for review are, the

questions of law arising upon the exceptions taken by the defendants upon the trial.

Under the issues raised by the pleadings and the testimony given on the trial on both sides, the evidence as to the retail value of the goods taken, was properly admitted. It was, under the circumstances, competent although by no means conclusive. A question of a more serious character would arise upon that part of the charge, in which the court laid down the rule, that the value of the goods taken should be the fair, retail market value of the goods on the 8th day of December, 1869, with interest thereon, if the defendants had taken a proper exception to it at the time. But as they acquiesced in it by excepting only to so much of the charge as instructed the jury, that the only question for them to consider was, as to the value of the goods, they cannot now be permitted to urge for the first time, that the court erred in that respect.

The same remarks apply to the attempt of defendants' counsel to convince us upon the argument, that the court below erred in directing the jury to allow interest on the value of the goods, for the reason that, in all cases of this nature, interest constitutes an item of damage in the discretion of the jury. But independent of that consideration, it may be well to point to the fact, that the proposition here contended for, has been expressly repudiated in this state. "Interest on the value at the time of the conversion," says JOHNSON, Ch. J., in delivering the opinion of the court of appeals in the case of *Andrews* agt. *Durant*, (18 *N. Y.*, 496), "is as necessary a part of complete indemnity as the value itself." There is no sense in the idea, that interest "is any more in the discretion of the jury than the value."

Two questions, therefore, remain to be considered :

1. The effect of the simultaneous levy under the thirteen attachments, upon the separate liability of the defendants in this action, and,

2. The admissibility or non-admissibility of the evidence

showing a subsequent seizure under process claimed to have been valid, which was offered by the defendants and rejected by the court.

*As to the first.*—The action was one sounding in tort. It was trespass for wrongfully taking and carrying away plaintiff's goods and breaking up her business. The attachments under cover of which the goods were taken in the first instance, having been set aside for irregularity, they afford no shield or protection whatever for such taking to the creditors who procured them to be issued . Such protection extends only to the officer while acting under them in the discharge of his public duty. The moment they were set aside the creditors stood as though no process had ever been issued, and became trespassers *ab initio.* (*Lyons* agt. *Yates,* 52 *Barb.,* 237 ; *Kerr* agt. *Mount,* 28 *N. Y.,* 659.)

And as the evidence plainly establishes that all the attaching creditors actively participated in the seizure and removal of plaintiff's entire stock at one and the same time, without separating their respective proceedings, and there being no evidence from which the extent of the separate liability of any one of them can be .ascertained, they must in the aspect of the case in which the question is presented by the appellants, be deemed, for the purpose of this case at least, to have been joint tort-feasors, and as such their liability is joint and several and enforceable accordingly at plaintiff's election. (*Creed* agt. *Hartmann,* 29 *N. Y.,* 591, affirming *S. C.,* 8 *Bosw.,* 123 ; *Kasson* agt. *The People,* 44 *Barb..* 347.)

In such case, an answer pleading a former recovery against one, to be good, must also aver actual satisfaction. (*Phil. on Ev. 5th ed., Vol. II., p.* 114, *134 ; *Wies* agt. *Fanning.* 9 *How.* 546.)

In the case at bar no such issue was raised by the pleadings, and if there had been there was no evidence to support it. On the contrary, the evidence showed not only that the defendants were very active in enforcing the levy and removal of the goods in the unusual and oppressive man-

ner in which they were seized and removed, but, in addition
to that all of plaintiff's goods were taken to defendants'store,
kept there for weeks after the attachments had been vacated
and the return of the goods demanded, and finally sold for
defendants' exclusive benefit under an execution subsequently
procured by them in some way, which is not specified.

The bare fact of the existence and simultaneous but fruit-
less levy of the attachments issued by the other creditors
cannot, therefore, be made available to the defendants in this
action in any aspect of the case.

*As to the second.*—To properly determine this question, it
is necessary to inquire whether a tort-feasor, who has taken
property by a wrongful act, can subsequently apply the
same on legal process issued in his own favor and against the
owner, and, if he cannot, under what circumstances and to
what extent he may be permitted to show that the same
property was taken from him again by a third party.

In *Hamner* agt. *Wilsey* (17 *Wend.*, 91) it was held, that a
return of property illegally taken, though accepted by the
owner, is no bar to an action, the return and acceptance
being available only in mitigation of damages. But even
for that purpose, it is not admissible to show that property
illegally taken was subsequently applied without the assent
of the owner, in satisfaction of a valid execution against him.
In *Otis* agt. *Jones* (21 *Wend.*, 394), some horses taken under
an attachment issued in an action, which the plaintiff found
himself compelled to discontinue were subsequently sold
under an execution issued in another action for the benefit of
the same party. The judge at the circuit ruled that the
effect of the sale, which was legal, was to mitigate the dam-
ages, and prevented the plaintiff from recovering any more
than nominal damages. But, on appeal, the court repudi-
ated this doctrine, reaffirmed the principle enunciated in
*Hamner* agt. *Wilsey* (17 *Wend.*, 91), and expressly held, that
a wrong doer cannot discharge himself by any act of his own
*without the assent of the injured party.* By procuring a

subsequent sale on legal process, the defendant cannot be better off than he would be if he had offered to restore the property to the plaintiff. And yet no tender will, at the common law, either bar an action for a tort or take away the right to full compensation in damages.

The decisions in *Lyon* agt. *Yates* (52 *Barb.*, 237) and *Peak* agt. *Lemon* (1 *Lansing*, 295) are to precisely the same effect.

A distinction, however, was made whenever it appeared that the property was taken again from the trespassers without any agency or connivance on his part, and applied to the owner's use, although without the latter's consent, by the act of a *third* person *and* the operation of law. In this class of cases the jury were permitted to take the taking of the goods by such third party and their application to plaintiffs' use into the account in estimating plaintiffs' damages. But at the same time it was deemed necessary in every instance that it should appear that the subsequent taking by such third party was independent of any agency on the part of the defendant, and that there was in point of fact an application to plaintiffs' uses. (*Higgins* agt. *Whitney*, 24 *Wend.*, 379; *Sherry* agt. *Schuyler ;* 2 *Hill*, 204; *Ball* agt. *Liney*, 44 *Barb.*, 505; *Ward* agt. *Benson*, 31 *How.*, 411.)

Now, the offer made by defendant to prove (it being assumed and agreed that the witness and the papers are in court), " that after these actions had terminated in the marine court, and before the commencement of this action, actions were commenced in the court of common pleas, between the same parties, and against the property of said Louisa Donai Wehle, duly and regularly issued therein, on the ground, that the defendant in that suit (the plaintiff in this suit) had disposed of property to defraud creditors ; and that thereunto the goods in question were seized by the sheriff; that a motion was made to vacate those attachments and denied ; and that the said attachments stand to-day," was rather vague. It may be questionable whether the words " between the

same parties" mean only the parties to this action or all the creditors named in the first thirteen attachments and the plaintiff herein. . Supposing the first to be the case, it is quite clear, upon the authorities already examined, that the defendants cannot be permitted to defend, either in whole or in part, the trespass committed by them by proof of a subsequent appropriation of the property to plaintiff's use, but without her consent, under an execution procured in their own favor. . And if the second is assumed to be the case, the same objection seems to apply with equal force to all the attaching creditors. Having been jointly concerned for the purpose of this action, at least, in the commission of a wrong, and being jointly and severally liable therefor at plaintiff's election, they were all alike incapacitated from making a subsequent legal appropriation of plaintiff's property either for their joint account or for account of any one of their number without plaintiff's assent. To hold otherwise would be to hold, in effect, that one of a number of joint tort-feasors may escape liability by inducing any one of his confederates to do what he is not permitted to do. But inasmuch as the testimony given on behalf of the defendants shows, that the defendants were, as already stated, the only ones that derived any benefit from the taking of plaintiff's property, and that there has been no appropiation of the same in point of fact to plaintiff's use under legal process subsequently procured by the other creditors, and inasmuch as the court below charged the jury to consider the value of the goods taken from plaintiff under defendants' attachments, and the jury must be presumed to have found in accordance with such instruction, it is unnecessary to pursue this line of inquiry any further.

Another grave objection to the receipt of the proposed evidence in this action is, that even if its sufficiency as a subsequent legal appropriation to plaintiff's use as well as its competency be assumed, it is not pertinent to any of the issues raised by the pleadings, because not pleaded. Defend-

ant's counsel, it is true, strenuously argued, that it should have been received, at least in mitigation of damages, and that, for that purpose, it did not require being pleaded. But on a critical examination, this claim also will be found to be untenable. Mitigating circumstances do not, and never did amount to a defense to any part of plaintiff's claim. They may diminish the nominal claim made by him, but do not diminish the real claim, or reduce it below what it was originally.

A defense, as understood in law language, on the other hand, is a full answer to whole or to some part of plaintiff's demand.

Under the old practice both were admissible under the general issue, without being pleaded, and this fact led to a frequent confusion of the distinction to some extent, at least, between partial defense and circumstances of mitigation ( *Harter* agt. *Crill,* 33 *Barb.,* 283).

Now, the evidence, which was proposed and excluded in this case, did not in any wise tend to mitigate the trespass, or to diminish plaintiff's claim, whether nominally made too large or not, for in such case, the law itself prescribes the true measure, and a certain and definite measure, of damages; it did not consist of circumstances which existed at the time of commission of the trespass, and possessed a mitigating or extenuating character that as such could be considered in estimation of plaintiff's loss, which had then fully accrued; but it was offered for the purpose of bringing about, when received, a reduction not of plaintiff's claim, but of plaintiff's recovery. Whether it be considered, therefore, as a set-off or as matter of avoidance, or in bar, in full or *pro tanto,* it was equally new matter purporting to constitute, at least a partial defense, and as such should have been set up in the answer ( *Code sections* 149, 150.)

It is, indeed, somewhat remarkable that no case can be found in the books in which this precise question has been determined. The case of *Higgins* agt. *Whitney* and *Sherry*

agt. *Schuyler*, above cited, occurred before the Code. In *Ball* agt. *Liney*, (44 *Barb.*, 505), the answer did contain all necessary averments showing a full and complete appropriation to plaintiff's use; and that the pleader must have been equally careful and precise, in *Ward* agt. *Benson*, (31 *How.*, 411), is apparent from the report of the whole case. But if any authority be needed, it will be found that the principle of the decision of the court of appeals, in *McKyring* agt. *Bull*, (16 *N. Y.*, 279), is fully applicable to the present case. SELDEN, J., in delivering the opinion of the court in that case, in the course of which he exclusively reviewed the decisions of the English courts upon this subject as well as the changes affected by the Code, concludes as follows:

" My conclusions, therefore, is that section 149 of the Code, should be so construed as to require the defendants in all cases, to plead any new matter constituting either an entire or partial defense, and to prohibit them from giving such matter in evidence upon the assessment of damages, when not set up in the answer. Not only payment, therefore, in whole or in part, but release, accord and satisfaction, arbitrament, &c., which may still, for aught I see, be made available in England in mitigation of damages, without plea, must here be pleaded" (See also *Folland* agt. *Johnson*, 16 *Abb.*, 235; *Beckett* agt. *Lawrence*, 7 *Abb. N. S.*, 403; *Bush* agt. *Prosser*, 11 *N. Y.*, 347, 352, and *Smith* agt. *Reeves*, 33 *How.*, 183). The evidence embraced in defendants' offer was, properly excluded, therefore, as not pertinent to the issues raised by the pleadings.

It appearing as the final result of this examination, that none of the exceptions taken by the defendants can be sustained in law, the judgment appealed from must be affirmed, with costs.

BARBOUR, Ch. J., concurred in the foregoing opinion.

MONELL, J., concurred in the conclusion upon other grounds.